**UNITED STATES of America,**
**Appellant,**

v.

**Donald I. CHRISTENSEN, Appellee.**

**No. 23069.**

United States Court of Appeals
Ninth Circuit.

Dec. 24, 1969.

A. Lee Peterson (argued), Asst. U. S. Atty., Marvin S. Frankel, Asst. U. S. Atty., Douglas B. Baily, U. S. Atty., Anchorage, Alaska, Harold P. Shapiro, Atty., Dept. of Justice, Washington, D. C., for appellant.

John M. Stern, Jr. (argued), Nathaniel H. Goodrich, David L. Mahan, Washington, D. C., for appellee.

Before BARNES, ELY and HUFSTEDLER, Circuit Judges.

BARNES, Circuit Judge:

This is an appeal by the United States, plaintiff in the court below, from an order and judgment of dismissal with prejudice of an action brought to recover civil penalties pursuant to the Federal Aviation Act, 49 U.S.C. § 1471. The district court had jurisdiction under 49 U.S.C. 1487 and 28 U.S.C. § 1345. Our jurisdiction arises under 28 U.S.C. § 1291.

The complaint upon which the action was based alleged that the defendant, an employee of the Federal Aviation Agency and a holder of an airline transport pilot certificate, while piloting an aircraft on an official F.A.A. flight, failed, in the absence of any emergency, to follow flight plan clearance instructions of the Air Traffic Control, and, while deviating from such clearance, failed to follow further instructions of the Air Traffic Control, in violation of Federal Aviation Regulations, 14 C.F.R. § 91.75(a) and (b).

The defendant filed a motion to dismiss, predicated on the theory that as a federal employee he was engaged in the operation of a public aircraft as that term is defined in the Federal Aviation Act, and that *because the aircraft was a public aircraft, it was not subject to*

*regulation by the F.A.A.* Therefore, defendant submitted, 14 C.F.R. § 91.75 (a) and (b) was not applicable, and the complaint failed to state a claim against defendant upon which relief could be granted. The district court granted defendant's motion for the reasons stated therein. C.T. 104.

■ The question we must decide is whether the provisions of Part 91 of the Federal Aviation Regulations relating to flight rules (Subpart B), and particularly those in 14 C.F.R. § 91.75(a) and (b), relating to compliance with Air Traffic Control clearances and instructions, apply to "public aircraft," such as the appellee herein was operating, and as defined in the Federal Aviation Act, 49 U.S.C. § 1301(30). For the reasons stated below, we answer this question in the affirmative and, therefore, reverse the judgment of the district court.

Initially, we note that United States v. Aero Spacelines, Inc., 361 F.2d 916 (9th Cir. 1966), a case discussed by both parties to this appeal, is not directly relevant to the issue here presented. In *Aero Spacelines, Inc.,* this court held that a "public aircraft * * * within meaning of that term as used in [§ 1301 (30)]", *i. e.,* an aircraft used exclusively in the service of any government, but not including any government-owned aircraft engaged in carrying persons or property for commercial purposes, was not subject to the regulations promulgated by the Federal Aviation Administrator covering *Commercial Operator Certification* and, therefore, the defendant was not required to obtain a commercial operator's certificate in order to operate aircraft pursuant to its contract with the National Aeronautics and Space Administration. The following was also observed in dicta:

> "It would thus appear that aircraft used exclusively in the service of the government, but not including any government-owned aircraft engaged in carrying persons or property for commercial purposes, have long been exempt from regulatory control and from rules and regulations relating to

'civil aircraft.' " [361 F.2d at 921–922.]

However, this court was not concerned in Aero Spacelines, Inc., with regulations of the F.A.A. relating to flight rules, nor with instructions from Air Traffic Control. Dicta from that case should not be controlling on our present analysis. We therefore distinguish it. Our research has revealed that Congress recognized the important need for flight rules and instructions from Air Traffic Control to be applicable uniformly to all aircraft. See discussion, *infra*, of legislative history; *cf.* 49 U.S.C. § 1401(a) (b) (1964) ("public aircraft" must register with Administrator). Therefore, we turn now to the relevant statutory provisions (not considered in *Aero Spacelines, Inc.*) to decide the present controversy.

Title 49 U.S.C. § 1348, Airspace control and facilities—Use of airspace, provides in subsection (c), Air traffic rules:

"The Administrator is further authorized and directed to prescribe air traffic rules and regulations governing the flight of aircraft, for the navigation, protection, and identification of aircraft, for the protection of persons and property on the ground, and for the efficient utilization of the navigable airspace, including rules as to safe altitudes of flight and rules for the prevention of collision between aircraft, between aircraft and land or water vehicles, and between aircraft and airborne objects."

The term "aircraft" is defined in 49 U.S.C. § 1301(5) as "any contrivance now known or hereafter invented, used, or designed for navigation of or flight in the air." The parties are agreed that appellee was operating an "aircraft" at the time in question.

Pursuant to the above authority, regulations pertaining to flight rules were promulgated. By express provision, these regulations apply to "aircraft"— and not simply to "civil aircraft" ("any aircraft other than a public aircraft," 49 U.S.C. § 1301(14)), as appellee here-

in contends. Thus, 14 C.F.R. § 91.1, *Applicability*, provides that "this part describes rules governing the operation of aircraft (other than moored balloons, kites, unmanned rockets, and unmanned free balloons) with the United States." Hence, "public aircraft" are not specifically excluded in 14 C.F.R. § 91.1.

14 C.F.R. § 91.61, *Applicability*, provides:

"This subpart prescribes flight rules governing the operation of aircraft within the United States."

Thereafter, 14 C.F.R. § 91.75, the provision appellee was alleged to have violated, states in relevant part:

"(a) When an ATC clearance has been obtained, no pilot in command may deviate from that clearance, except in an emergency, unless he obtains amended clearance. * * *

(b) Except in an emergency, no person may, in an area in which air traffic control is exercised, operate an aircraft contrary to an ATC instruction."

The above language leads us to conclude that all aircraft—both "civil" and "public"—in the absence of an "emergency," (which we need not here define) are to be subject to the flight rules of the F.A.A. and the instructions of the A.T.C. Moreover, this conclusion is also compelled by the clear intent expressed in the Federal Aviation Act of 1958, part of which Act appears in 49 U.S.C. § 1348 (c)—the Administrator's rule-making authority—and 49 U.S.C. § 1471—the civil penalty section. When construing this Act, we are guided by the familiar rule of construction stated by this court in United States v. Miller, 303 F.2d 703, 707 (9th Cir. 1962), cert. denied, 371 U.S. 955, 83 S.Ct. 507, 9 L.Ed.2d 502 (1963), when construing provisions under the previous aviation act (the Civil Aeronautics Act of 1938):

"It is axiomatic that any regulation should be construed to effectuate the intent of the enacting body. Such

intent may be ascertained by considering the language used and the overall purpose of the regulation, and by reflecting on the practical effect of the possible interpretations."

■ We turn to the legislative history of the Federal Aviation Act of 1958 (Pub.L.No. 85–726, 72 Stat. 731). The intent to make all aircraft subject to the air traffic rules becomes immediately and continually apparent. In fact, the events which led to the new legislation were a series of "fatal air crashes between civil and military aircraft *operating under separate flight rules.*" (1958 U.S. Code Cong. & Admin. News, p. 3742 [emphasis added]). Thus, the whole tenor of the Act and its principal purpose is to create and enforce one unified system of flight rules. It is stated, for example, that the House bill proposed to "[g]ive the Administrator authority to regulate the use of *all airspace* over the United States by both civil and military aircraft, and to establish and operate a *unified system* of air-traffic control." *Id.* at p. 3745. (Emphasis added.) Such references appear throughout the legislative history.

See also the opinion of the Second Circuit in Air Line Pilots Ass'n, Int'l v.

Quesada, 276 F.2d 892, 894 (1960), in which that court noted:

"The Federal Aviation Act was passed by Congress for the purpose of centralizing in a single authority—indeed, in one administrator—the power to frame rules for the safe and efficient use of the nation's airspace."

*Cf.* Lee v. United States, 261 F.Supp. 252, 257 (C.D.Cal.1966); United States v. Bradley, 252 F.Supp. 804, 805 (S.D. Tex.1966); Moungey v. Brandt, 250 F. Supp. 445, 450 (W.D.Wisc.1966).

In light of the above authorities and clear expressions of legislative intent, we must reject appellee's contentions, according to which Congress—while attempting to create a unified system for flight control—enacted such a system applicable to both civil and military aircraft, but not "public" aircraft. We find no basis in the language or history of the statute to reach this result.[1]

We next consider the practical effect of the possible interpretations. It is conceivable that a state might exempt state-owned automobiles from licensing; or even permit state-owned vehicles to be exempt from operation only by licensed drivers. But it is difficult to envisage a state intentionally exempting

1. Subsequent to the oral argument of this matter on August 28, 1969, and its submission on that date, we vacated said order of submission and requested that the Federal Aviation Administration furnish this court with an *amicus curiae* brief on the issues presented; and giving appellee permission to reply. Such briefs having been received, we again ordered the matter to stand submitted as of December 15th, 1969.

The F.A.A. in its brief requested that we reverse the judgment appealed from, stating as follows:

"The Federal Aviation Administration and its predecessor agencies have consistently taken the position, as evidenced by numerous enforcement actions involving public aircraft, that flight rules apply to public aircraft as well as civil aircraft. A holding in this case contrary to the Federal Aviation Administration's position regarding its authority to regulate public aircraft would have serious safety implications,

particularly in light of the large non-military fleet of public aircraft now operating throughout the United States.

"Once it is established that the Flight Rules provision of 14 C.F.R. § 91 are applicable to 'public aircraft,' it is submitted that no question could arise regarding the amenability of a pilot operating such aircraft to the civil penalty provisions of 49 U.S.C. § 1471 (a). In pertinent part 49 U.S.C. § 1471 (a) (1) provides that '[*a*]*ny person* who violates * * * any provision of Title III [under which Part 91 was promulgated] or any rule, regulation, or order issued thereunder * * * shall be subject to a civil penalty of *not to exceed $1,000* for each such violation' (emphasis added). That section applies universally and without exception, and the Federal Aviation Administration has always acted consistently with that provision."

drivers of state vehicles from obedience to the traffic laws. Surely such an exemption, in the absence of clear and specific language demonstrating legislative intent beyond any doubt, would not be inferred or interpreted by the courts so as to create such a hazard to the public in their use of airspace.

The judgment of the district court is reversed, and the case remanded for further proceedings not inconsistent with the views expressed herein.