

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-17-2006

# Ilchuk v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 04-3094

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Ilchuk v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1677.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1677

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-3094

———————

RUSLAN I. ILCHUK,

Petitioner

v.

ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA,

Respondent

———————

ON PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS
(No. A71 248 856)

———————

Argued September 30, 2005

Before: ALITO and AMBRO, <u>Circuit</u> <u>Judges</u>,
and RESTANI,[*] <u>Judge</u>.

(Filed: January 17, 2006)

———————

[*]Honorable Jane A. Restani, Chief Judge of the United
States Court of International Trade, sitting by designation.

Tatiana S. Aristova, Esquire (Argued)
Law Offices of John J. Gallagher
1760 Market Street, Suite 1100
Philadelphia, PA 19103

      Counsel for Petitioner

Peter D. Keisler
      Assistant Attorney General, Civil Division
Emily A. Radford
      Assistant Director
Linda S. Wernery, Esquire
Aviva L. Poczter, Esquire
Blair T. O'Connor, Esquire
William C. Peachey, Esquire
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

Eric D. Miller, Esquire (Argued)
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

      Counsel for Respondent

_____

OPINION OF THE COURT
_____

RESTANI, <u>Judge</u>.

Ruslan Ivanovich Ilchuk ("Petitioner") challenges the decision of the Department of Homeland Security ("DHS") Board of Immigration Appeals ("BIA") upholding the determination of the Immigration Judge ("IJ") that Petitioner is subject to removal from the United States, but reversing the IJ's grant of withholding of removal. We conclude that the BIA did not err in holding

2

Petitioner removable under 8 U.S.C. § 1227(a)(2)(A)(iii) (2000) (commission of an aggravated felony, i.e., a theft crime) but did err in reversing the IJ. Petition is remanded.

## FACTS

Petitioner entered the United States in April 1994 at the age of fifteen[1] as a refugee. His status was adjusted to that of legal resident on April 19, 1995.

Petitioner was a member of a Pentecostal Church in the Ukraine and, at the time of his January 13, 2004 administrative hearing, was also a member of a Pentecostal Church in the United States. According to the U.S. Department of State International Religious Freedom Report 2002, Orthodox Christianity is the majority religion in the Ukraine and non-native religions (including the Pentecostal Church) are de jure limited, but de facto governmental restrictions were not reported.

Petitioner and other family members testified as to educational and work difficulties encountered in the Ukraine by Pentecostals prior to their immigration to the United States in 1994. Petitioner also testified that an uncle suffered persecution in the Soviet army in the 1980's because of his religious commitments against bearing arms and swearing oaths. The BIA concluded, however, that respect for religious rights has been improving under the post-Communist presidential/parliamentary government established in 1991. While the BIA did note brutal treatment of fellow soldiers by their peers (even leading to death), it found no evidence that such treatment was on account of religious beliefs. It also found that discrimination by the government in granting conscientious objector status to members of certain religions, but not Pentecostals, did not amount to persecution under the appropriate legal standard. Accordingly, it concluded Petitioner's eligibility for military conscription until the age of 28 did not qualify him for withholding of removal.

---

[1] Petitioner was born on August 7, 1978.

Petitioner's immigration difficulties began with a criminal conviction in April 2001. He was an ambulance driver who on February 11 and 13, 2000, was dispatched to emergent incidents. The dispatch calls, however, had been diverted from the legally designated emergency service provider to Petitioner's employer. Petitioner was convicted of theft of services, 18 Pennsylvania Consolidated Statutes Annotated ("Pa. C.S.A.") § 3926(b) (West 1983); three counts of reckless endangerment, 18 Pa. C.S.A. § 2705 (West 2000); and one count of criminal conspiracy, 18 Pa. C.S.A. §§ 903 and 3926(b) (West 1998). Petitioner was sentenced to six to twenty-three months of house arrest with electronic monitoring.

The BIA found Petitioner subject to removal under three different statutory provisions: 8 U.S.C. § 1227 (a)(2)(A)(iii), conviction of an aggravated felony (a theft offense with an imprisonment term of one year or more); 8 U.S.C. § 1227(a)(2)(A)(i), conviction of a crime of moral turpitude within five years of admission; and 8 U.S.C. § 1227(a)(2)(A)(ii), conviction of two or more crimes of moral turpitude.

Because withholding based on asylum is not available to one found removable based on an aggravated felony (see 8 U.S.C. § 1158(b)(2)(A)(ii) (2000) (asylum not available to one convicted of a particularly serious crime); 8 U.S.C. § 1158(b)(2)(B)(i) (aggravated felony is a particularly serious crime)), the BIA addressed Petitioner's claims for withholding of removal under 8 U.S.C.§ 1231(b)(3)(A) (2000) and under the Convention Against Torture ("CAT"), and denied them.

### JURISDICTION AND STANDARD OF REVIEW

We have limited jurisdiction under 8 U.S.C. § 1252 (2005) to review a final order of removal. Pursuant to 8 U.S.C. § 1252(a)(2)(C) and (D), if a petitioner is subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii) as an aggravated felon, we may review only constitutional and other legal issues. Kamara v. Attorney General of the U. S., 420 F.3d 202, 211 (3d Cir. 2005). We review such pure questions of law and issues of application of law to uncontested facts under a de novo standard. Id. Where we

4

have jurisdiction to review the IJ's or BIA's findings of fact, such findings are conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## DISCUSSION

## I.    Petitioner is removable as an aggravated felon

As indicated, conviction of an aggravated felony is a ground for removal under 8 U.S.C. § 1227(a)(2)(A)(iii). 8 U.S.C. § 1101(a)(43) (2000) defines aggravated felony to include:

> (G) a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year;

This presents two legal issues: (1) is at least one of the crimes for which Petitioner was convicted a "theft offense" within the meaning of 8 U.S.C. § 1101(a)(43)(G); and (2) does Petitioner's sentence to house arrest remove his crime from the covered theft category because "house arrest" is not imprisonment.

We address each issue in turn.

### A.  Petitioner was convicted of a theft offense

The state law crime of which Petitioner was convicted, 18 Pa. C.S.A. § 3926, reads in pertinent part as follows:

> § 3926. Theft of Services
> (b) Diversion of Services.– A person is guilty of theft if, having control over the disposition of services of others to which he is not entitled, he knowingly diverts such services to his own benefit or to the benefit of another not entitled thereto.

Nugent v. Ashcroft, 367 F.3d 162 (3d Cir. 2004), resolved many of the preliminary issues before us. In Nugent we observed

5

that because the Immigration and Nationality Act ("INA") does not define a "theft offense," and because Congress did not otherwise supply a definition, the court could not find that a theft offense was free from ambiguity, and thus had to determine whether the offense at issue was a "theft offense" by the "formal categorical approach." Id. at 170.[2] No one has argued before us that the common law definition of "theft" incorporated the type of theft crime set forth in the Pennsylvania statute before us. We stated in Nugent, however, that where a traditional definition of a crime was not in tune with modern meaning, a generic or contemporary definition, such as one found in state statutes, may apply. Id. at 172 (citing Drakes v. Zimski, 240 F.3d 246, 249 (3d Cir. 2001) (citing Taylor v. United States, 495 U.S. 575, 600 (1990)). We agreed in Nugent with our sister circuits that it was Congress's intent for a "theft offense" to be more broadly defined than the common law definition of larceny, and that by using that phrase, rather than merely the term "theft," Congress signaled that it was not presenting an exhaustive list of offenses, but rather, a definition with broad meaning. Nugent, 367 F.3d at 173–74 (citing Hernandez-Mancilla v. INS, 246 F.3d 1002, 1008 (7th Cir. 2001); United States v. Corona-Sanchez, 291 F.3d 1201, 1205 (9th Cir. 2002) (en banc) (superseded on other grounds as recognized in United States v. Vidal, 426 F.3d 1011, 1015 (9th Cir. 2005)). We noted that the Hernandez-Mancilla and Corona-Sanchez courts defined a theft offense as "a taking of property or an exercise of control over property without consent." Nugent, 367 F.3d at 174 (citing Hernandez-Mancilla, 246 F.3d at 1009). We relied on Pennsylvania's consolidated theft statute, which was taken from section 223.0 of the Model Penal Code, and which defines property in pertinent part as "anything of value." Nugent, 367 F.3d at 174 (citing 18 Pa. C.S.A. § 3901 (West 1983)).[3]

---

[2] That is, we look to the offense of conviction, not to the particular facts of the underlying criminal conduct.

[3] In Nugent, ultimately we concluded that although the theft crime at issue was a "theft offense" under the Immigration and Nationality Act of 1952 ("INA"), it was also a fraud and deceit crime that did not satisfy the INA aggravated felony standard for a fraud and deceit crime. Id. at 176. No contention of a hybrid

6

As to the facts now before us, it is clear that ambulance calls are not valueless. Private ambulance companies were alleged in the state criminal proceeding to charge in the range of $300.00 to $500.00 for transporting a patient to a hospital. Even assuming that this valuation may not be completely accurate, it is apparent that the reason the calls at issue were diverted was because they had value. Further, conviction under 18 Pa. C.S.A. § 3926(b) requires the perpetrator to have had control over the disposition of services of others. Services are defined at 18 Pa. C.S.A. § 3926(h) to include transportation services. Also, the perpetrator must not have been entitled to dispose of those services, and must have had knowing criminal intent, defined by Pennsylvania law as awareness of the fact that it was "practically certain that his conduct will cause such a result." 18 Pa. C.S.A. § 302(b)(2)(ii) (West 1998); Cf. Williams v. INS, 54 Fed. App'x 55, 58 (3d Cir. 2002) (finding conviction for possession of stolen property in the fifth degree, a class A misdemeanor under New York law requiring "knowing[] possess[ion of] stolen property," an "aggravated felony" under § 1101(43)(G)). In this case, the term "knowingly" requires proof that Petitioner was aware of the practical certainty that his acceptance of the ambulance call would result in diversion of its benefits to someone not entitled to them. Thus, we conclude that the modern sense of the term "theft offense" under 8 U.S.C. § 1101(a)(43)(G) includes the crime described in 18 Pa. C.S.A. § 3926, because it requires the taking or exercise of control over something of value knowing that its owner has not consented.

**B. House arrest with electronic monitoring is "imprisonment" for purposes of 8 U.S.C. § 1227(a)(2)(A)**

"Imprisonment" is explained partially by 8 U.S.C. § 1101(a)(48) as follows:

> (B) Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any

crime was made here.

suspension of the imposition or execution of thatimprisonment or sentence in whole or in part.

The actual term of the sentence imposed is ordinarily the definitional touchstone. United States v. Graham, 169 F.3d 787, 790 (3d Cir. 1999). Petitioner does not argue that the range of sentence is disqualifying, but rather that house arrest, with permission to work and receive medical treatment outside the home, is not imprisonment.

There is nothing in the INA indicating that the site or mode of imprisonment is determinative. Our sister circuit has opined that home confinement may constitute custody. See Rodriguez v. Lamer, 60 F.3d 745, 749 (11th Cir. 1995); see also Salim v. Reno, No. Civ. A. 2000-CV-4603, 2000 WL 33115910, at *4–*5 (E.D. Pa. Jan. 16, 2001) (finding that a convict whose sentence was suspended in favor of mental treatment in a state hospital and later in his home "was sentenced and imprisoned within the meaning of the INA"). Certainly home confinement with monitoring is a serious restriction of liberty. Given that "imprisonment" under the INA includes the suspension of imposition or execution of the sentence, a restrictive definition is not in order.[4] Indeed, the statute's disjunctive phrasing – "imprisonment . . . include[s] the period of incarceration or confinement" – suggests that congress intended for "imprisonment" to cover more than just time spent in jail. See Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise . . . ."). Accordingly, we conclude the sentence here was a term of "imprisonment" in the broad sense intended by the INA.

---

[4] It should be noted that, for purposes of the United States Sentencing Guidelines, home confinement has been found not to constitute imprisonment. See, e.g., United States v. Phipps, 68 F.3d 159, 162 (7th Cir. 1995). Although we have accepted the Guidelines as a tool for interpreting the INA in some circumstances, see Valansi v. Ashcroft, 278 F.3d 203, 213 (3d Cir. 2002), here Congress evinces a different meaning.

There are serious questions as to whether the Petitioner was convicted of a crime of moral turpitude within five years of admission under 8 U.S.C. § 1227(a)(2)(A)(i), or of multiple crimes of moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii), so as to be subject to removal under those provisions. It is sufficient that the BIA's determination of removability is sustained under one of the three grounds relied on. Thus, we do not address these provisions. We conclude, rather, on the basis of 8 U.S.C. § 1227(a)(2)(A)(iii), that Petitioner is subject to removal as an aggravated felon, and as such his claim for withholding of removal must be established under the withholding of removal statute, 8 U.S.C. § 1231(b)(3)(A), or the CAT.[5]

## II. The BIA erred in denying withholding of removal or relief under CAT

To be eligible for a grant of withholding of removal to any country, an alien must show that his life or freedom would be threatened in such a country on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A).[6] This statutory provision requires him or her to demonstrate a clear probability of persecution on one of these five grounds. INS v. Stevic, 467 U.S.

---

[5] Petitioner does not dispute that ineligibility for asylum is the result of being found subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii). See 8 U.S.C. § 1158(b)(2)(B).

[6] 8 U.S.C.A. § 1231(b)(3)(A) reads as follows:

(b) Countries to which aliens may be removed
  (3) Restriction on removal to a country where alien's life or freedom would be threatened
   (A) In general
    Notwithstanding paragraphs (1) and (2), the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a social group, or political opinion.

407, 430 (1984).  An alien must demonstrate that it is more likely than not he would be subject to such persecution if returned to his native land.  Id.  This is a more stringent standard than that required to establish eligibility for asylum.  Paripovic v. Gonzales, 418 F.3d 240, 246 (3d Cir. 2005).

We have no jurisdiction to opine as to whether, as a factual matter, Petitioner is likely to be persecuted upon his return to the Ukraine.  8 U.S.C. § 1252(a)(2)(C).  Rather, we must determine if the BIA made a legal error in arriving at its conclusion that Petitioner did not meet his burden of establishing a clear likelihood of persecution on account of his religious beliefs.  8 U.S.C. § 1252(a)(2)(D).  The crux of the dispute is the BIA's reversal of the IJ's finding that Petitioner qualified for withholding of removal.  That is, the IJ found that Petitioner likely would suffer persecution because his religious beliefs require him to decline combat status.  Although the IJ's factual conclusions were not completely clear, it appears he concluded that imprisonment or other persecution in the military was a likely consequence of Petitioner's adherence to his religion, because alternative service is not available to him, while it is to members of other religions.

While the BIA concluded that general abuse in the military on account of religious beliefs was not demonstrated, it appeared to adopt the factual finding of the IJ that alternative service is not available to Pentecostals.  See BIA Opinion at AR 4.[7]  The government's suggestion in its brief that Petitioner may establish his right to alternative service, even though he is not a member of one of the religions with an "automatic exemption," is nowhere supported by the record, nor did the BIA so conclude.

_____

[7] The record shows that "the right to refuse service" is guaranteed to "congregations having legal status in Ukraine, which are the following: Adventists, Lutherans, Baptists, Jehovah's Witnesses and Charismatic Christian Church [sic]."  (AR 372).  The BIA did not address whether "Charismatic Christian Church," or any other religion on the list, would include the Pentecostal Church under Ukrainian law.

10

There is no dispute that military service itself is not persecution, nor are reasonable penalties for failure to serve. See Lukwago v. Ashcroft, 329 F.3d 157, 168–69 (3d Cir. 2003); Matter of A-G-, 19 I. & N. Dec. 502, 506 (BIA 1987). From that basic tenet the BIA concludes that only if Petitioner can establish that he likely will be seriously abused for his religious beliefs while in the army or in prison can he qualify for relief. This ignores the statute that includes deprivation of freedom, not just physical harm, on account of religion as a ground for relief. We found no case that directly addresses the issue at hand. Most instructive for our purposes is Foroglou v. INS, 170 F.3d 68 (1st Cir. 1999). In that case, a non-religious conscientious objector did not qualify for refugee status. The court accepted that a country could provide for no exemptions from military service without engaging in persecution. Id. at 71. In finding no claim even if religious adherents, but not other conscientious objectors, could qualify for conscientious objector status, it stated "[t]he asylum statute does not inflict on foreign governments the obligation to construct their own draft laws to conform to this nation's own highly complex equal protection jurisprudence." Id. at 72.

That said, the BIA has suggested that overt discrimination in the enforcement of conscription laws may reflect a government's intent to persecute members of a given religion. Matter of Canas, 19 I. & N. Dec. 697, 709 (BIA 1988). In that case, the BIA denied asylum for a petitioner who claimed that, as a Jehovah's Witness, he would be persecuted for failure to comply with El Salvador's conscription laws. Id. at 700–01. The BIA dismissed his petition for review for failure to show that "the Government's conscription laws are carried out in a manner which punishes a person because of his particular religious beliefs or religious affiliation." Id. at 709. The BIA noted, however, that the case might be different "[i]f, for example, a law provided exceptions for all but those with particular religious beliefs, or was neutral on its face but enforced only against those with particular religious convictions . . . ." Id. at 709 n.12.

Other cases recognize narrow grounds for refugee status based on avoidance of military service. For example, disproportionately severe punishment based on the statutorily

11

recognized grounds resulting from failure to serve, <u>M.A. v. INS</u>, 899 F.2d 304, 312 (4th Cir. 1990), or "if the alien would be associated with a military whose acts are condemned by the international community as contrary to the basic rules of human conduct." <u>Id.</u> These exceptions were also recognized in <u>Mekhoukh v. Ashcroft</u>, 358 F.3d 118, 126 (1st Cir. 2004), but found not to apply.

Cases generally recognize that requiring alternative service for refusal to serve is not persecution. <u>See</u>, <u>e.g.</u>, <u>Krastev v. INS</u>, 101 F.3d 1213, 1217 (7th Cir. 1996) (alternative service of dangerous work in a steel plant upon refusal to join military is not persecution). The parties do not cite nor have we found any case, however, involving an outright bar to conscientious objector status for adherents of some religions where it is available to adherents of other faiths. Even a clear statement as to withholding of removal for politically based, as opposed to religiously based, conscription or related persecution is lacking. <u>See</u>, <u>e.g.</u>, <u>Nenadovic v. INS</u>, 108 F.3d 124, 127 (7th Cir. 1997) (noting question of whether politically motivated conscription is persecution but resolving case on different grounds). Of course, it is the political or religious belief of the persecuted person that is at issue, not the belief of the persecutor. <u>See</u> <u>INS v. Elias-Zacarias</u>, 502 U.S. 478, 482 (1992) (upholding BIA conclusion that petitioner did not establish conscription into guerilla army would be on account of petitioner's political beliefs).

The record before us does not present the issue of whether any differences in the level of proof required of different religious adherents to establish a right to alternative service is persecution on account of religion. The BIA did not rely on Petitioner's ability in some way to establish his eligibility for alternative service, or even his failure to produce evidence on this point. Rather, without deciding if Petitioner would decline to bear arms and would be imprisoned or otherwise punished therefor, the BIA, in essence, concluded that imprisonment based on religious beliefs is not persecution. This is an error of law. <u>Cf.</u> <u>Guo v. Ashcroft</u>, 361 F.3d 1194, 1203 (9th Cir. 2004) (fifteen-day detention and physical abuse for resistance to discriminatory government action based on religion constitutes persecution).

We conclude from the plain words of the statute that if the Petitioner has established that he will be imprisoned because of his Pentecostal beliefs that he will qualify for withholding of removal. That this involves a two-step process, in that here he must establish that imprisonment is a result of denial of alternative service because of his membership in a particular religion, is not a bar. That is, if no exemptions for conscientious objection are available to anyone, imprisonment for failure to serve is on account of failure to perform a legal duty. This is not cognizable persecution. On the other hand, if members of some religions may avoid service without penalty based on conscientious objection, but adherents of other religions are denied the exemption outright, resulting imprisonment is on account of religion, not just failure to serve.

The BIA found that "the evidence is insufficient to show a clear probability that harm would be inflicted on the respondent on account of his religion," and therefore dismissed Petitioner's CAT claim because "it follows that the respondent has not demonstrated that he more likely than not would be tortured if removed to the Ukraine." Because we remand for reconsideration of withholding of removal, we also remand for reconsideration of Petitioner's CAT claim. We note that should the BIA deny withholding under § 1231(b)(3)(A) for failure to show persecution on the basis of a protected ground, it should also consider whether beatings administered in prison or military service, which the BIA recognized may result in death, constitute torture under CAT. Because withholding under CAT does not require proof that torture was inflicted on the basis of a protected ground, such as religion, a finding that Petitioner would not be persecuted on account of his religion does not extinguish a CAT claim as a matter of law. See Lukwago, 329 F.3d at 183.

As the BIA truncated its analysis and the IJ's ruling was not clear as to the factual findings leading to the ultimate granting of the petition, therefore, the petition for review is granted. We remand this matter for application of the correct legal standard as set forth herein.

_____