

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-27-2006

# Djokovic v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2270

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Djokovic v. Atty Gen USA" (2006). *2006 Decisions.* Paper 16.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/16

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 06-2270
_____

SKENDER DJOKOVIC,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review of a Decision of
the Board of Immigration Appeals
Immigration Judge Annie Garcy
(Agency No. A78 203 087)
_____

Submitted Under Third Circuit LAR 34.1(a)
DECEMBER 22, 2006

BEFORE:    SLOVITER, MCKEE AND AMBRO, <u>CIRCUIT JUDGES</u>

(Filed  December 27, 2006)

_____

OPINION
_____

PER CURIAM

     Skender Djokovic, a native of the former Yugoslavia and a citizen of Serbia-

Montenegro, appeals a final order of removal.  We will affirm the order of the Board of

1

Immigration Appeals ("BIA").

Djokovic came to the United States in 1999 and filed a timely application for asylum and withholding of removal. The asylum office did not refer Djokovic's case to the Immigration Court until 2004, when a notice to appear was issued. At an immigration hearing, Djokovic conceded, through counsel, that he is removable for being present here without being admitted or paroled. In addition to asylum and withholding of removal, Djokovic sought relief under the Convention Against Torture.

In support of his applications for relief from removal, Djokovic testified that he was summoned for military duty in 1998. A captain told him that he would be sent to Kosovo. Djokovic told the captain that he would report for duty but then fled. Djokovic, who testified that he is Albanian, objected to serving in the military because it was sending soldiers to Kosovo to kill Albanians. Djokovic lived with his aunt for two months. During this time, the military police looked for him at his parents' house. The police took his parents to a military base and questioned them about his whereabouts. Djokovic then stayed with a relative in Bosnia for approximately six months. The military police continued to look for him. Djokovic left Bosnia with the help of smugglers and ultimately arrived in the United States.

Djokovic's parents received a summons for Djokovic to report for military duty in 2004. Djokovic testified that he did not want to serve because the officers who were in power in 1998 were still in command. Djokovic also stated that he feared that he would be arrested and harmed if he returned to Serbia-Montenegro because he did not report for

2

military duty in 1998. He stated that his relative who returned to attend a funeral was arrested.

The Immigration Judge ("IJ") denied Djokovic's applications for asylum and withholding of removal. The IJ concluded that Djokovic evaded any past persecution by avoiding the draft, and that his additional complaints of harassment based upon his Albanian ethnicity did not rise to the level of persecution.

The IJ also ruled that Djokovic did not establish a fear of future persecution based upon his avoidance of the draft. The IJ recognized that Djokovic could be lawfully conscripted if removed, but noted that the combat in Kosovo no longer existed, and there was no evidence that the present military officers would order Djokovic to commit human rights violations. The IJ stated that Djokovic was not a conscientious objector because he only opposed the combat in Kosovo. The IJ also recognized that Djokovic could be prosecuted and imprisoned because he evaded the draft, but found no evidence that he would be punished more severely than other draft evaders.

The IJ also ruled that Djokovic did not establish a fear of future persecution based upon his Albanian ethnicity. The IJ concluded that Djokovic did not establish that he was, in fact, Albanian. In addition, the IJ stated that the record only established discrimination against Albanians.[1]

The BIA dismissed Djokovic's appeal. The BIA agreed with the IJ that Djokovic

---

[1]The IJ also denied Djokovic relief under the Convention Against Torture. This ruling is not at issue on appeal.

did not establish that he was a conscientious objector. The BIA also agreed, notwithstanding Djokovic's credibility, that he did not satisfy his burden of proof. Finally, the BIA noted that it lacked jurisdiction to consider Djokovic's claim that his due process rights were violated based upon the delay in adjudicating his asylum application.

Djokovic filed a pro se petition for review. We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Djokovic presents four arguments on appeal.

First, Djokovic contends, as he did before the BIA, that his due process rights were violated based upon the four-year delay in adjudicating his asylum application, and the fact that conditions in Serbia-Montenegro changed during that time. Under 8 U.S.C. § 1252(g), however, courts lack jurisdiction "to hear any cause or claim by . . . any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Because Djokovic's claim arises out of the decision to commence removal proceedings in 2004, the Government correctly argues that we lack jurisdiction to entertain it. See Reno v. American-Arab Anti-Discrimination Comm., et al., 525 U.S. 471, 487 (1999) (holding court lacked jurisdiction over aliens' claim that the INS selectively enforced the immigration laws against them); Chapinski v. Ziglar, 278 F.3d 718, 721-22 (7th Cir. 2002) (holding § 1252(g) barred suit seeking to compel the INS to process applications for lawful permanent residency status).

Djokovic's second and third arguments are related. Djokovic contends that the IJ's credibility determination was confusing, and resulted in an erroneous requirement

4

that he present corroborating evidence of his Albanian ethnicity. The IJ stated that Djokovic was credible but not convincing in establishing his ethnicity. The IJ's skepticism was based upon the fact that Djokovic did not testify in the Albanian language at the hearing or speak Albanian at the asylum office.

We agree with Djokovic that the IJ's doubts about his ethnicity are unfounded. Djokovic explained that he spoke Albanian at home in the former Yugoslavia, but he spoke Serbo-Croatian in school. Djokovic stated that he was more comfortable with the Serbo-Croatian language because he studied it, and that he spoke Serbo-Croatian with the uncle with whom he lived in the United States. Djokovic, however, was not prejudiced by the IJ's finding because the IJ addressed Djokovic's claims based upon his Albanian ethnicity, and correctly concluded that Djokovic did not establish past persecution or a well-founded fear of future persecution.

Lastly, Djokovic argues that the IJ erred in concluding that he was not a conscientious objector. Even if Djokovic could be deemed a conscientious objector, he would not necessarily be a refugee for purposes of asylum. An alien must establish that punishment for the failure to serve is on account of the alien's beliefs, not just the failure to perform a legal duty. Ilchuk v. Attorney General, 434 F.3d 618, 626 (3d Cir. 2006). Djokovic has not made such a showing.

Djokovic appears to argue that he qualifies as a refugee because he did not want to serve in an army that was known internationally to commit serious human rights abuses. While other courts have recognized this as a basis for refugee status, see id. at 625, we do

5

not decide whether Djokovic established past persecution because, even if he did, the changed country conditions in Serbia-Montenegro rebut any presumption of future persecution. The record establishes that the war in Kosovo has ended, the government has changed, and there has been "sweeping reform" of the military. A.R. at 359; see also Islami v. Gonzales, 412 F.3d 391, 398 (2d Cir. 2005) (holding that presumption of future persecution of an Albanian who fled Yugoslavia to avoid the draft was rebutted by evidence that the Serb domination of Kosovo has ended).

Accordingly, we will deny the petition for review.