# Matter of Jose AGUILAR-AQUINO, Respondent

File A095 748 786 - Los Angeles, California

*Decided March 12, 2009*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) "Custody," as the term is used in the regulation at 8 C.F.R. § 1236.1(d)(1) (2008) relating to requests for amelioration of the terms of release from custody, requires actual physical restraint or confinement within a given space.

(2) The respondent, who requested "amelioration of the terms of release" from an Immigration Judge following his release from detention by the Department of Homeland Security with conditions requiring an electronic monitoring device and home confinement, was "released from custody" within the meaning of 8 C.F.R. § 1236.1(d)(1).

(3) The Immigration Judge lacked jurisdiction to consider the respondent's request for amelioration of the terms of his release under 8 C.F.R. § 1236.1(d)(1) where the respondent had been "released from custody" more than 7 days prior to his request.

FOR RESPONDENT: Cynthia Lucas, Santa Monica, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Jillian L. Woods, Assistant Chief Counsel

BEFORE: Board Panel: PAULEY, ADKINS-BLANCH, and WENDTLAND, Board Members.

PAULEY, Board Member:

In a decision dated May 16, 2008, an Immigration Judge set the respondent's bond at $1,500 pursuant to section 236(a) of the Immigration and Nationality Act, 8 U.S.C. § 1226(a) (2006). The Immigration Judge further ordered that upon posting the bond, the respondent would be relieved of the obligations imposed by the Department of Homeland Security ("DHS") that he wear an electronic monitoring device and be subject to home confinement. The DHS has appealed from that decision.[1] The appeal will be sustained.

---

[1] The respondent argues that the DHS's appeal is moot because his removal proceedings have been administratively closed. However, administrative closure does not constitute a

(continued...)

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent, a native and citizen of Mexico, entered the United States without inspection in or about 1993. On February 14, 2008, the DHS issued a Notice to Appear (Form I-862) charging that the respondent is subject to removal under section 212(a)(6)(A)(i) of the Act, 8 U.S.C. § 1182(a)(6)(A)(i) (2006), as an alien who is present in the United States without being admitted or paroled. On the same day, the DHS also issued a Notice of Custody Determination (Form I-286) and an Order of Release on Recognizance (Form I-220A) stating that the respondent was released on his own recognizance, provided he complied with certain conditions. These conditions included reporting for any hearing or interview as directed by the DHS or the Executive Office for Immigration Review, surrendering for removal from the United States if so ordered, reporting in person to the DHS on the 10th day of each month at 10 a.m., not changing his place of residence without first securing written permission, not violating any local, State, or Federal laws or ordinances, and assisting the DHS in obtaining any necessary travel documents. The respondent was also required to wear an electronic monitoring device on his ankle as a part of the DHS's Enhanced Supervision/Reporting ("ESR") program and to remain in his residence between the hours of 7 p.m. and 7 a.m., but these requirements were not listed on the Form I-220A.

On April 24, 2008, the respondent requested a redetermination of his custody status before the Immigration Judge, asking that the electronic monitoring device be removed and that he be released on his own recognizance. The Immigration Judge granted the respondent's motion for a redetermination of custody status, set a bond of $1,500, and ordered that the respondent's ankle monitor be removed and home confinement be waived upon his posting of the bond. In reaching her decision, the Immigration Judge concluded that the ESR program is a form of "custody" within the meaning of section 236 of the Act and the regulation at 8 C.F.R. § 1236.1(d)(1) (2008), which gave her jurisdiction to redetermine the conditions on the respondent's custody status under section 236(a) at any time prior to the issuance of a final order of removal.

---

(...continued)

final administrative order, so that action does not preclude us from having jurisdiction to consider the DHS's appeal. *See* 8 C.F.R. § 1236.1(d)(1) (2008).

## II. ISSUE

The issue on appeal is whether the Immigration Judge had jurisdiction to consider the respondent's request for a redetermination of custody status. The DHS argues that she lacked jurisdiction because the respondent was released from DHS custody and did not request a bond hearing before an Immigration Judge within 7 days of his release, in accordance with 8 C.F.R. § 1236.1(d)(1). The DHS further asserts that even if the Immigration Judge had jurisdiction to reconsider the respondent's custody status, she lacked authority to redetermine the conditions of his release, other than to determine the amount of bond.

The respondent contends that the Immigration Judge had jurisdiction to redetermine his custody status because he was not released from the custody of the DHS. Specifically, the respondent maintains that the conditions placed upon his release from detention, in particular the requirements that he wear an electronic monitoring device and remain under home confinement for 12 hours each day, constitute a form of "custody." The respondent further argues that the Immigration Judge has the authority to redetermine the conditions of his release beyond setting a monetary bond amount.

## III. STANDARD OF REVIEW

We review an Immigration Judge's findings of fact, including findings as to the credibility of testimony, under the "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i) (2008); *see also Matter of S-H-*, 23 I&N Dec. 462, 464-65 (BIA 2002). Questions of law, discretion, and judgment and all other issues in appeals from decisions of Immigration Judges are reviewed de novo. 8 C.F.R. § 1003.1(d)(3)(ii); *see also Matter of A-S-B-*, 24 I&N Dec. 493 (BIA 2008).

## IV. ANALYSIS

Initially, we address the DHS's argument that the Immigration Judge lacked jurisdiction to redetermine the respondent's custody status. In order to decide whether the Immigration Judge had jurisdiction, we must consider whether the restrictions imposed by the DHS upon the respondent's release on his own recognizance constitute "custody" within the meaning of section 236 of the Act and 8 C.F.R. § 1236.1(d).

The guiding principles for construing administrative regulations are similar to the rules governing statutory construction. *See Matter of F-P-R-*, 24 I&N Dec. 681, 683 (BIA 2008); *Matter of C-W-L-*, 24 I&N Dec. 346, 348 (BIA 2007). As with statutes, our fundamental concern in construing an administrative regulation is "'to effectuate the intent of the enacting body.'"

*See United States v. Christensen*, 419 F.2d 1401, 1403 (9th Cir. 1969) (quoting *U.S. v. Miller*, 303 F.2d 703, 707 (9th Cir. 1962)). Applying the standard canons of statutory construction, we must begin with the premise that words used in a regulation are to be given their plain and ordinary meaning. *See Malat v. Riddell*, 383 U.S. 569, 571 (1966). Additionally, in determining the meaning of a regulation, we consider the language of the regulation, its overall purpose, and the practical consequences of any suggested interpretation. *See United States v. Christensen*, *supra*, at 1403-04. Any ambiguities should be resolved in favor of an interpretation consistent with the statutory and regulatory scheme. *See United Telecommunications, Inc. v. Comm'r*, 589 F.2d 1383, 1390 (10th Cir.1978). Therefore, assuming that the regulations are consistent with the statute, we must construe them to effectuate the intent of the enacting body. *See United States v. Christensen*, *supra*, at 1403.

The regulation at 8 C.F.R. § 1236.1(d)(1) provides as follows:

> After an initial custody determination by the district director, including the setting of a bond, the respondent may, *at any time* before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority in section 236 of the Act (or section 242(a)(1) of the Act as designated prior to April 1, 1997 in the case of an alien in deportation proceedings) to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter. *If the alien has been released from custody, an application for amelioration of the terms of release must be filed within 7 days of release.* (Emphasis added.)

With regard to the deadline for requesting a bond hearing before the Immigration Judge, 8 C.F.R. § 1236.1(d)(1) draws a distinction between aliens who are in the custody of the DHS and those who have been released from DHS custody. Specifically, an alien may request a bond hearing "at any time" to ameliorate the conditions under which he or she may be released from DHS custody. An alien who has already been released from DHS custody, however, must request a bond hearing to seek amelioration of the terms of his or her release from custody before the Immigration Judge within 7 days of the release. After the expiration of the 7-day period, the alien must request review of the terms of release from the district director. *See* 8 C.F.R. § 1236.1(d)(2).

Neither the Act nor the regulations specifically define the term "custody," so we must start with the "'ordinary or natural' meaning" of the term. *Bailey v. United States*, 516 U.S. 137, 145 (1995) (quoting *Smith v. United States*, 508 U.S. 223, 228 (1993)). "Custody" has been broadly defined as "[t]he care and control of a thing or person for inspection, preservation, or security." *Black's Law Dictionary* 412 (8th ed. 2004). Other more specific definitions for "custody" include (1) "keeping; guardianship; care"; (2) "the keeping or charge

of officers of the law"; and (3) "imprisonment; legal restraint." *The Random House Dictionary of the English Language* (unabridged ed. 1973). It is evident from these definitions that the term "custody" has multiple meanings and can be interpreted differently depending on the situation in which it is used.

We next look to the statutory language and legislative history of section 236(a) of the Act for guidance as to the meaning of the term "custody." Section 236 of the Act was enacted substantially in its present form by section 303 of the Illegal Immigration Reform and Immigration Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-585 ("IIRIRA"). In drafting section 236(a) of the Act, Congress was guided by the language of former section 242(a)(1) of the Act, 8 U.S.C. § 1252(a)(1) (1994). However, a comparison of the language used in sections 236(a) and 242(a)(1) of the Act reveals that Congress substituted the term "detain" where the term "custody" had previously been employed.[2] Nevertheless, the Conference Committee Report for the IIRIRA noted that "[n]ew section 236(a) restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. Rep. No. 104-828, at 210 (1996) (Conf. Rep.), 1996 WL 563320. Thus, it appears that Congress did not intend any meaningful change to the scope of the Attorney General's previous authority under new section 236(a) of the Act, despite the substitution of the term "custody" for the term "detain."

---

[2] Former section 242(a)(1) of the Act provided, in pertinent part:

Pending a determination of deportability in the case of any alien as provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into *custody*. . . . [A]ny such alien taken into *custody* may, in the discretion of the Attorney General and pending such final determination of deportability, (A) be continued in *custody*; or (B) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (C) be released on conditional parole. (Emphasis added.)

Section 236(a) of the Act provides, in pertinent part:

On a warrant issued by the Attorney General, an alien may be arrested and *detained* pending a decision on whether the alien is to be removed from the United States. . . . [P]ending such decision, the Attorney General—
(1) may continue to *detain* the arrested alien; and
(2) may release the alien on—
    (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
    (B) conditional parole; but
(3) may not provide the alien with work authorization . . ., unless the alien is lawfully admitted for permanent residence or otherwise would . . . be provided such authorization. (Emphasis added.)

We therefore find that Congress used the terms "custody" and "detain" interchangeably and did not intend for them to be afforded different meanings. In this regard, we also observe that section 236(c) of the Act, which is entitled "Detention of Criminal Aliens," employs the term "custody" in requiring that the Attorney General "take into custody" aliens who have committed certain criminal offenses.

Although it appears that Congress did not make a distinction between the terms "custody" and "detain" in section 236 of the Act, the interpretation of these two terms can vary significantly. They do, however, share some common meaning. In this regard, we recognize that both a person who has been released on parole and one who remains incarcerated can be considered to be in "custody." On the other hand, the term "detain" generally refers to actual physical restraint or confinement within a given space and has been defined as "[t]he action of detaining, withholding, or keeping something in one's custody" or "confinement of a person in custody." *Black's Law Dictionary*, *supra*, at 479-80. Therefore, although a person who is in custody is not necessarily in detention, one who is in detention is necessarily in custody. With this understanding, we find that the term "custody" as it is used in 8 C.F.R. § 1236.1(d)(1) refers to actual physical restraint or confinement within a given space. *See Matter of Sanchez*, 20 I&N Dec. 223, 225 (BIA 1990) (requiring that an alien be in the "actual physical custody" of the former Immigration and Naturalization Service for bond jurisdiction to vest with the Immigration Judge).

In reaching her decision that the respondent remained in the "custody" of the DHS while under the ESR program, the Immigration Judge relied on the interpretation of the term "custody" employed under the Federal habeas corpus statute. *See Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara County, Cal.*, 411 U.S. 345 (1973) (holding that the restraints imposed on a petitioner who was released on his own recognizance constituted "custody" within the meaning of the Federal habeas corpus statute); *Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (holding that a paroled prisoner was in "custody" in view of the restraints and conditions of his parole order). However, we find that Congress did not intend the term "custody" in section 236 of the Act to be afforded the broad interpretation employed in the Federal habeas corpus statute, where it is interpreted expansively to ensure that no person's imprisonment or detention is illegal. *See* 28 U.S.C. § 2241 (2006) (providing that a writ of habeas corpus may be granted "to a prisoner . . . in custody in violation of the Constitution . . . of the United States"). In this regard, we note that a writ of habeas corpus may only be granted to a person who is in "custody." As it is used in 8 C.F.R. § 1236.1(d)(1), however, "custody" refers to whether the Immigration Judge or the district director has jurisdiction for purposes of review of the DHS's initial custody determination.

Regardless of whether an alien is in custody or has been released from custody, review of the DHS's custody determination is available under the regulation.

Because the DHS released the respondent from actual physical detention, we find that he was "released from custody" within the meaning of 8 C.F.R. § 1236.1(d)(1). The conditions placed by the DHS on the respondent's release, including the home confinement and electronic monitoring device, constituted "terms of release" and were not "custody" within the meaning of section 236(a) of the Act and 8 C.F.R. § 1236.1(d)(1). Our conclusion is consistent with the cases cited by the DHS, which hold that home confinement and requiring a person to wear an electronic monitoring device do not constitute "detention." *See Fraley v. U.S. Bureau of Prisons*, 1 F.3d 924, 926 & n.1 (9th Cir. 1993) (holding that home confinement combined with electronic monitoring does not constitute "official detention"); *Nguyen v. B.I. Inc.*, 435 F. Supp. 2d 1109, 1114 (D. Ore. 2006) (finding that placement in the DHS's Intensive Supervision Appearance Program, which requires an alien to wear an electronic monitoring device on his ankle and remain under home confinement for 12 hours each day, is not "detention").

Under 8 C.F.R. § 1236.1(d)(1), the respondent, who was not detained, had 7 days in which to request a bond hearing before the Immigration Judge. Because the respondent did not request a bond redetermination hearing within 7 days of his release from custody, the Immigration Judge lacked the authority to redetermine his custody status. Inasmuch as we find that the Immigration Judge lacked jurisdiction in this matter, we need not reach the DHS's alternative argument regarding the Immigration Judge's authority to set conditions beyond the establishment of a monetary bond. Accordingly, the DHS's appeal will be sustained, and the Immigration Judge's order will be vacated.

**ORDER:** The appeal of the Department of Homeland Security is sustained.

**FURTHER ORDER:** The decision of the Immigration Judge is vacated.