NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3789
_____

THASHIAN ORISSA MCKENZIE,
                                        Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent.

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A042-463-274)
Immigration Judge:  Honorable Charles M. Honeyman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 15, 2011

Before:  RENDELL, JORDAN and BARRY, *Circuit Judges.*

(Filed: September 15, 2011)
_____

OPINION
_____

JORDAN, *Circuit Judge.*

Thashian McKenzie seeks review of the decision of the Board of Immigration

Appeals ("BIA") concluding that she is ineligible for cancellation of removal because she

has been convicted of an aggravated felony. In particular, McKenzie contends that the BIA erred in concluding that her sentence of house arrest without electronic monitoring constitutes "imprisonment" as defined by the Immigration and Nationality Act ("INA"). We disagree, based on our opinion in *Ilchuk v. Attorney General*, 434 F.3d 618 (3d Cir. 2006), and will therefore deny McKenzie's petition for review.

## I.       Background

McKenzie is a citizen of Jamaica who came to the United States in 1990 as a lawful permanent resident. On January 15, 2002, she pled guilty in the Philadelphia Court of Common Pleas to four counts of theft by unlawful taking or disposition. On March 12, 2002, McKenzie was sentenced to four concurrent terms of eight to twenty-three months of house arrest followed by a term of probation. She would, however, be permitted to leave her home to work, attend medical appointments and religious services, and purchase food. Two weeks later, the sentencing court modified McKenzie's sentence to reflect that she would "continue on house arrest but without electronic monitoring." (A.R. at 110.)

At some point after completing her term of house arrest, McKenzie visited Jamaica. When she returned to the United States on August 18, 2005, she sought admission as a returning lawful permanent resident. After a deferred inspection, McKenzie was served with a Notice to Appear charging her with being removable as having been convicted of a crime involving moral turpitude. *See* 8 U.S.C.

2

§ 1182(a)(2)(A)(i)(I).

McKenzie conceded removability but applied for cancellation of removal. The government contended that McKenzie was ineligible for cancellation of removal because she had been convicted of an aggravated felony. *See* 8 U.S.C. § 1229b(a)(3). The specific issue before the Immigration Judge ("IJ") was whether house arrest without electronic monitoring constitutes "imprisonment" as defined by the INA so as to render McKenzie an aggravated felon. *See* 8 U.S.C. § 1101(a)(43)(G) & (48)(B).[1]

The IJ found McKenzie's case to be indistinguishable from *Ilchuk*, in which we held that the petitioner's sentence of six to twenty-three months of house arrest with electronic monitoring and permission to work and receive medical treatment outside the home constituted "imprisonment" as defined by the INA. 434 F.3d at 623. Accordingly, the IJ concluded that McKenzie was ineligible for cancellation of removal as an aggravated felon and ordered her removed to Jamaica.

McKenzie appealed to the BIA, arguing that *Ilchuk* was wrongly decided in light of case law interpreting Pennsylvania law and the Bail Reform Act and in light of recent BIA precedent. The BIA rejected McKenzie's arguments, describing *Ilchuk* as "directly on point" and concluding that McKenzie had been convicted of an aggravated felony

---

[1] Under § 1101(a)(43)(G), "a theft offense ... for which the term of imprisonment [imposed is] at least one year" constitutes an aggravated felony. *See United States v. Graham*, 169 F.3d 787, 790-91 (3d Cir. 1999). McKenzie does not contest that she was convicted of a "theft offense," nor does she contest that her sentence was of a sufficient duration to bring her conviction within that provision.

3

because she "was incarcerated or confined within the meaning of the [INA], which makes no mention of jail or prison." (A.R. at 4.) McKenzie filed a timely petition for review.

## II. Discussion

We have jurisdiction to review the BIA's final order of removal pursuant to 8 U.S.C. § 1252(a), although our jurisdiction is limited to constitutional or legal questions where, as here, the basis for removal is a conviction for an aggravated felony. *Pierre v. Att'y Gen.*, 528 F.3d 180, 184 (3d Cir. 2008) (en banc). We exercise *de novo* review over the BIA's legal determinations. *Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004).

The only question presented by McKenzie's petition is whether her sentence of house arrest without electronic monitoring constitutes "imprisonment." In holding that the sentence of house arrest in *Ilchuk* constituted imprisonment within the meaning of § 1101(a)(43)(G), we looked to the INA's definition of the term, which states: "[a]ny reference to a term of imprisonment … include[s] the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part." 434 F.3d at 623 (quoting 8 U.S.C. § 1101(a)(48)(B)). We observed that "the statute's disjunctive phrasing – imprisonment … include[s] the period of incarceration *or* confinement – suggests that [C]ongress intended for imprisonment to cover more than just time spent in jail." *Id.* (internal quotation marks omitted and alterations original). Accordingly, the "site or mode of imprisonment" was not determinative, such that "home confinement

4

with monitoring[, which constitutes] a serious restriction of liberty[,]" qualified as imprisonment under the INA. *Id.*

Applying *Ilchuk* here, we conclude that McKenzie's home confinement was a serious restriction of her liberty and qualified as imprisonment under the INA. McKenzie argues that *Ilchuk* is distinguishable because the absence of electronic monitoring reflects reduced restrictions on her liberty relative to the petitioner in *Ilchuk*. We agree with the government, however, that an individual on house arrest is subject to a considerable restriction of liberty regardless of how she is being monitored. In other words, it is the confinement to one's home that restricts liberty, not the state's decision to ensure compliance with electronic monitoring, as opposed to some other means.

McKenzie also argues that *Ilchuk* was incorrectly decided for several reasons and that "imprisonment" is better construed as requiring "a substantial restriction of liberty, an institutional setting and custody by the executive authority."[2] (Pet. Br. at 25 (emphasis omitted).) *Ilchuk*, however, is binding precedent, which we must follow. *See Garcia v. Att'y Gen.*, 553 F.3d 724, 727 (3d Cir. 2009) ("We are bound by precedential

---

[2] McKenzie predominantly relies on cases construing statutes other than the INA and addressing restrictions such as home confinement in the context of pretrial release. *See, e.g., Reno v. Koray*, 515 U.S. 50, 52 (1995) (holding that time spent in a community treatment center did not constitute "official detention" within 18 U.S.C. § 3585(b), so as to entitle the defendant to a sentence credit); *Commonwealth v. Kyle*, 874 A.2d 12, 22 (Pa. 2005) (holding that the defendant was not entitled to credit for time spent on house arrest with electronic monitoring while released on bail because he was not "in custody" within the meaning of the Pennsylvania Sentencing Code during that time).

opinions of our Court unless they have been reversed by an en banc proceeding or have been adversely affected by an opinion of the Supreme Court."); *see also* Internal Operating Procedure 9.1 (3d Cir. 2010) (noting that a precedential panel opinion binds subsequent panels).

Finally, McKenzie argues that a recent BIA precedent, *In re Aguilar-Aquino*, 24 I. & N. Dec. 747 (BIA 2009), requires revisiting *Ilchuk*. In *Aguilar-Aquino*, the BIA held that the term "custody" as used in a regulation pertaining to pre-hearing custody decisions, *see* 8 C.F.R. § 1236.1(d)(1), requires "actual physical restraint or confinement within a given space" and does not encompass home confinement with electronic monitoring. 24 I. & N. Dec. at 752. Although we acknowledge the deference owed to the BIA's reasonable interpretations of ambiguous provisions in the INA, *see Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-83 (2005) (discussing *Chevron, USA Inc. v. Natural Res. Def. Council Inc.*, 467 U.S. 837 (1984)), we fail to see how *Aguilar-Aquino*, which does not discuss the INA's definition of imprisonment and construes a different term altogether, undermines *Ilchuk*. Indeed, the BIA itself did not consider *Aguilar-Aquino* to be relevant to McKenzie's case.

## III. Conculsion

Because we see no basis for distinguishing or departing from *Ilchuk*, we conclude that McKenzie has been convicted of an aggravated felony such that she is ineligible for

6

cancellation of removal.[3]  Therefore, we will deny the petition for review.

---

[3] McKenzie also contends that she was "denied her right … to establish that the particular terms of her sentence were not sufficiently restrictive to constitute 'imprisonment' ... ." (Pet. Br. at 13.)  That assertion is unfounded.  McKenzie had an opportunity to make her record – she submitted documentation concerning her sentence, an affidavit in which she described the very limited period that she was subject to monitoring, and documents concerning the organization of the Philadelphia Adult Probation and Parole Department, all of which were introduced into the administrative record.  There is no indication that she was prohibited from introducing additional evidence to the extent she wanted to do so.