

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-24-2007

# Meiliana v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2680

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Meiliana v. Atty Gen USA" (2007). *2007 Decisions.* Paper 390.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/390

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2680
_____

HANNY MEILIANA,

                                        Petitioner,

vs.

ALBERTO R. GONZALES,
Attorney General of the United States,

                                        Respondent.

_____

On Petition for Review of an Order of
the Board of Immigration Appeals
U.S. Department of Justice
(BIA No. A96-265-018)
Immigration Judge: Donald V. Ferlise
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 20, 2007

Before: SLOVITER, SMITH, and GARTH, Circuit Judges.

(Opinion Filed: September 24, 2007)
_____

OPINION
_____

Garth, Circuit Judge:

Petitioner Hanny Meiliana seeks our review of the decision of the Board of Immigration Appeals ("BIA") affirming the decision of the immigration judge ("IJ"), who denied her applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We will deny the petition for review.

I.

Petitioner Hanny Meiliana, a thirty year old female native and citizen of Indonesia, entered the United States on June 18, 2000 on a nonimmigrant B-2 visa, which expired on December 17, 2000. In March 2003, Meiliana filed an application for asylum, withholding of removal, and protection under the CAT. On April 25, 2003, the Department of Homeland Security served Meiliana with a Notice to Appear, charging that Meiliana was removable under section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States longer than her visa authorized. Meiliana conceded removability, but continued to seek asylum, withholding of removal, and protection under the CAT.

II.

On January 26, 2005, the IJ conducted a hearing on the merits of Meiliana's applications for relief. At the January 26, 2005 hearing, Meiliana testified as follows. Meiliana is an ethnic Chinese Christian. During Meiliana's childhood, through the time she went to college, ethnic Indonesians called her names like "dirty girl." She was also required to pay double the ordinary cost to obtain an Indonesian identification card. Meiliana testified

that on three occasions men attempted to touch her on buses or trains, but that she successfully avoided these attempts by changing seats and sitting with a group of women. Meiliana reported these incidents to the police but they did nothing.

After graduating High School, Meiliana moved to Jakarta to attend a Chinese ethnic college. While Meiliana attended college, ethnic Indonesian men often demanded money from her and other students. Meiliana also testified that during the widespread rioting in Indonesia in May 1998 she heard that a group of men were planning to attack her dormitory and other dormitories in the area. Meiliana stated that the reason these dormitories were targeted was because they housed mostly ethnic Chinese students. Meiliana admitted that the attacks never occurred.

After college graduation, Meiliana began work near where she had attended college. Meiliana testified that she waited two years after graduating college before coming to the United States because she needed to obtain a passport and assist her mother with travel arrangements. Meiliana testified that she is afraid of being returned to Indonesia because there might be another riot in which she may be targeted because of her ethnic Chinese origin. Meiliana conceded that there have been no such riots in Indonesia recently, but contended that the current president is unpopular and that riots may break out if he does not step down.

III.

In an oral decision dated January 26, 2005, the IJ denied Meiliana's applications for asylum, withholding of removal, and protection under the CAT. The IJ denied Meiliana's

asylum application because she did not file it within one year after she entered the United States as required under the INA. The IJ rejected Meiliana's assertion that her ignorance of the rules regarding asylum relief constituted changed or extraordinary circumstances sufficient to excuse noncompliance with the one year statutory deadline. With respect to the remaining forms of relief – i.e., withholding of removal and protection under the CAT – the IJ then found Meiliana's testimony to be credible but insufficient to establish past persecution or a likelihood of future persecution, or a clear probability that Meiliana would be tortured if she was returned to Indonesia.[1]

Meiliana appealed to the BIA. In an order dated April 17, 2006, the BIA adopted and affirmed the decision of the IJ and dismissed the appeal. The BIA noted that the IJ "correctly determined that the respondent's asylum application is time barred under the regulations and that none of the exceptions applies." The BIA also concurred with the IJ that Meiliana "failed to meet her burden of proof in demonstrating that she suffered past persecution or has a well founded fear of persecution upon return to Indonesia."

## IV.

We exercise jurisdiction to review the BIA's final order of removal under INA § 242(a), 8 U.S.C. § 1252(a). Because the BIA adopted the findings of the IJ and also commented on the sufficiency of the IJ's determinations, this Court reviews the decisions of

---

[1]The IJ also stated that even if Meiliana had filed a timely asylum application, such an application would nevertheless be denied because she had failed to show a well-founded fear of future persecution if returned to Indonesia.

-3-

both the BIA and the IJ. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). We review these decisions for substantial evidence, considering whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Balasubramanrim v. INS, 143 F.3d 157, 161 (3d Cir. 1998). The decisions must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (quoting Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001).

V.

We begin by noting that we lack jurisdiction to review the IJ's finding that Meiliana's asylum application is time barred. The INA provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General" regarding the timeliness of an asylum application or the existence *vel non* of changed or extraordinary circumstances justifying a late filing. 8 U.S.C. § 1158(a)(2), (3); Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003).

Although the subsequently enacted REAL ID Act amended the INA to allow constitutional claims or questions of law to survive its jurisdiction-stripping provisions, see REAL ID Act § 106(a)(1)(A)(iii), 8 U.S.C. § 1252(a)(2)(D), this court has held that claims of changed or extraordinary circumstances to justify an untimely asylum application fall within the Attorney General's *discretion* and therefore do not raise a constitutional claim or question of law covered by the REAL ID Act's judicial review provision. Sukwanputra v. Gonzales, 434 F.3d 627, 635 (3d Cir. 2006). Thus, "despite the changes of the REAL ID

Act, 8 U.S.C. § 1158(a)(3) continues to divest the court of appeals of jurisdiction to review a decision regarding whether an alien established changed or extraordinary circumstances that would excuse his untimely filing." Mudric v. AG of the United States, 469 F.3d 94 (3d Cir. 2006); Sukwanputra, 434 F.3d at 635. Accordingly, we are without jurisdiction to review the denial of Meiliana's asylum application.

VI.

The IJ and BIA found that Meiliana failed to demonstrate a clear probability that she suffered past persecution because the harassment and other incidents recounted in her testimony and asylum application do not rise to the level of "persecution" within the meaning of the INA. See 8 U.S.C. § 1101(a)(42)(A). "[T]he concept of persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). In Fatin, we defined persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Id.; see also Lukwago v. Ashcroft, 329 F.3d 157, 168 (3d Cir. 2003); Lin v. I.N.S., 238 F.3d 239, 244 (3d Cir. 2001).

Here, none of the incidents described in Meiliana's testimony or asylum application rise to the level of severity that would constitute persecution. Name calling, solicitations for money by native Indonesians, and higher fees to obtain an identification card clearly do not constitute the extreme behavior rising to the level of persecution. Likewise, the IJ correctly found that the attempted touchings Meiliana experienced while traveling on the train are consistent with ordinary criminal activity rather than persecution on account of Meiliana's

Chinese ethnicity.  See Abdille v. Ashcroft, 242 F.3d 477, 494 (3d Cir. 2001) ("[O]rdinary criminal activity does not rise to the level of persecution necessary to establish eligibility for asylum."); Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) ("Lie's account of two isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution.").  Finally, the May 1998 rumored attack on Meiliana's dormitory – which never occurred and resulted in no concrete harm – does not constitute past persecution because it was insufficiently "imminent or concrete."  See Chavarria v. Gonzalez, 446 F.3d 508, 518 (3d Cir. 2006); Zhen Hua Li v. AG of the United States, 400 F.3d 157, 165 (3d Cir. 2005) (holding that "unfulfilled threats, even death threats, do not qualify as past persecution unless highly imminent").

Nor has Meiliana demonstrated a clear probability of future persecution as required to be eligible for withholding of removal.  Ilchuk v. Attorney General, 434 F.3d 618, 624 (3d Cir. 2006).  To establish future persecution, Meiliana relies exclusively upon the Department of State Country Report on Human Rights Practices for 2003 ("Country Report") and the Department of State International Religious Freedom Report for 2004 ("Religious Freedom Report").[2]  However, these reports do not support Meiliana's claims of persecution.  For

---

[2]Meiliana also refers to the Department of State Country Report on Human Rights Practices for 2005.  However, we are unable to consider that report because, as Meiliana acknowledges, it was not included in the administrative record.  See Kamara v. AG of the United States, 420 F.3d 202, 218 (3d Cir. 2005); Berishaj v. Ashcroft, 378 F.3d 314, 318 (3d Cir. 2004).

example, while the Country Report indicates that there were many instances of discrimination and harassment during the year, it also states that the Indonesian government officially promotes racial and ethnic tolerance. According to the Country Report, ethnic Chinese played a major role in the Indonesian economy and celebrated the Chinese "Lunar New Year" as a national public holiday. There is no report of any violence – threatened or actual – against ethnic Chinese citizens of Indonesia. The Religious Freedom Report likewise provides no basis for finding that ethnic Chinese in Indonesia are subject to persecution. See also Lie v. Ashcroft, 396 F.3d 530, 538 (3d Cir. 2005) (declining to find that reports of widespread attacks on Chinese Christians in Indonesia, including press accounts of riots, vandalism, and robbery targeting Chinese Christians constitute a pattern or practice of persecution against Chinese Christians).

For these reasons, the IJ's findings that Meiliana has failed to demonstrate past persecution or a clear probability of future persecution are supported by substantial evidence, and her application for withholding of removal was properly denied.

The IJ's denial of protection under the CAT is also supported by substantial evidence, as Meiliana has not provided any evidence "that it is more likely than not that [] she would be tortured if removed to the proposed country of removal." Sevoian v. Ashcroft, 290 F.3d 166, 175 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)).

VII.

We will deny the petition for relief.