

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-10-2007

# Plumbay v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4936

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Plumbay v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1792.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1792

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-4936

———

FLORA PLUMBAY,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

———

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA No. A79-453-890)
Immigration Judge: Alberto J. Riefkohl

———

Submitted pursuant to Third Circuit LAR 34.1(a)
November 27, 2006

Before: FUENTES and GARTH, Circuit Judges, and POLLAK,* District Judge.

(Filed: January 10, 2007)

———

OPINION OF THE COURT

———

---

* The Honorable Louis H. Pollak, Senior District Judge for the United States
District Court for the Eastern District of Pennsylvania, sitting by designation.

FUENTES, <u>Circuit Judge</u>.

Flora Plumbay petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming an immigration judge's denial of her requested relief. We will deny the petition.

**I.**

As we write for the parties, we recount only those facts necessary to the disposition of the case. Plumbay, a native and citizen of Albania, arrived in the United States on June 22, 2002. Upon arrival, she attempted to enter the United States with a fraudulent passport but was intercepted by immigration officials. During an interview on that date, Plumbay admitted her passport was fake, but explained that she was only trying to enter the United States for "a better life for me and my future children." Furthermore, she told immigration officials that she was traveling with her fiancé, another Albanian passenger who had been onboard the plane. Plumbay was processed as an arriving alien and a few days later, on June 26, 2002, sat for a "credible fear interview" to determine her eligibility for asylum or other protection from removal. During this interview, Plumbay told immigration officials that she feared being kidnapped if she were to return to Albania, but explained that she had never been threatened or mistreated there. When asked what grounds would lead to this persecution, Plumbay did not mention political affiliation, but responded that young women in Albania were often targeted by kidnappers.

Plumbay was paroled into the United States and a Notice to Appear was issued

charging her as removable for lacking valid entry documentation and attempting to enter the country by fraud. After various changes of venue, Plumbay submitted an application for asylum, withholding of removal, and protection under the Convention Against Torture. In that application, Plumbay asserted that she feared for her life based on her political involvement with the Democratic Party in Albania. She explained that she engaged in various political activities for the Democratic Party, including advocacy against the mistreatment of women. Furthermore, she explained that young women were routinely kidnapped in Albania and that the Socialist government would not protect affiliates of the Democratic Party. Most importantly, Plumbay related that she was the victim of an attempted kidnapping near her home: on October 12, 2000, a man she recognized as a "trafficker in women" tried to abduct her. She escaped only because a passerby managed to rescue her.

On May 14, 2003, an immigration judge ("IJ") conducted a removal hearing at which Plumbay conceded removability but pursued asylum, withholding of removal, and protection under the Convention Against Torture. At the hearing Plumbay fleshed out her political involvement with the Democratic Party. She testified that she had been threatened by Socialist Party members for distributing pamphlets for the Democratic Party. Regarding the October 2000 abduction, Plumbay testified that it was three masked men in a police car that had attempted to abduct her. She testified that she could not see her attackers, nor did she recognize them, but could identify one of their voices as that of

a kidnapper notorious in her neighborhood. Moreover, Plumbay testified that she did not remember visiting a doctor after the abduction, but she later testified that she might have been seen by one.

Plumbay submitted documentary evidence. These documents included country condition materials and an affidavit from the President of the Democratic Party. They also included a recent application for medical treatment on which Plumbay indicated that she had been raped in Albania.

On May 28, 2004, the IJ issued a decision denying Plumbay's requested relief. The IJ based his decision on an adverse credibility determination, finding that her "whole story must be rejected as incredulous [sic]." (Admin. Rec. 48.). The IJ remarked that:

> [Plumbay's] statements have varied significantly between her general statements at the time of arrival to those provided during her credible fear interview to those contained in her application for asylum and finally from the contents of her documents.

(Admin. Rec. 43) After detailing various inconsistencies in Plumbay's accounts of persecution, the IJ concluded that it was "impossible for this court to establish the truth in this case." (Admin. Rec. 47-48.)

On October 7, 2005, the BIA adopted and affirmed the decision of the IJ. This petition for review followed.

## II.

The BIA had jurisdiction to review the IJ's order under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to review the BIA's order under 8 U.S.C. § 1252. When the BIA

-4-

summarily affirms an IJ's decision, we review the IJ's decision. <u>Partyka v. Attorney General</u>, 417 F.3d 408, 411 (3d Cir. 2005). An IJ's adverse credibility determination is reviewed for substantial evidence. <u>See</u> <u>Berishaj v. Ashcroft</u>, 378 F.3d 314, 323 (3d Cir.2004). Under this standard, we will uphold an adverse credibility determination unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); <u>Chen v. Ashcroft</u>, 376 F.3d 215, 222 (3d Cir. 2004).

Plumbay argues that the IJ's credibility determination was not supported by substantial evidence because it inappropriately relied on "minor inconsistencies" between statements in her hearing testimony, asylum application, airport interview, and supporting documentation. For example, she contends that there is a reasonable explanation for her statement to immigration officials that she was not fleeing persecution in Albania, but was traveling to the United States to make a better life with her fiancé. She explains that, although she did lie to immigration officials upon arrival, she only did so because she was "terrified" of going back to Albania.

Furthermore, Plumbay asserts that there were no unexplained inconsistencies concerning the October 2000 attack. The record reveals varying accounts of the persecution. At her credible fear interview, Plumbay stated that she had never been mistreated in Albania. Her asylum application stated that one man, whom she recognized, tried to abduct her, but did not mention a sexual assault. At her removal proceeding, Plumbay testified that three masked police men tried to kidnap her. Some documentary

evidence indicated that the attack involved an attempted rape, but another document indicates that a rape occurred. Plumbay explains that these inconsistencies resulted primarily from her continuing discomfort discussing the attack.

Pointing to these and other inconsistencies, Plumbay argues that any reasonable fact finder would determine that they resulted from the trauma of the October 11 incident and Plumbay's confusion upon arrival. We do not agree. Reviewed as a whole, the record reveals many inconsistencies. Some are minor: for example, the discrepancies about the specific dates of Plumbay's involvement in the Democratic Party. Other inconsistencies, however, are more significant: for example, the differing statements about the October abduction attempt.

We recognize that it is plausible to conclude, as Plumbay contends, that these inconsistencies can be explained by trauma and confusion. Nevertheless, we cannot say that any reasonable fact finder would be compelled to adopt this explanation. A reasonable fact finder could just as readily conclude that the inconsistencies in the record are the result of fabrication, or that Plumbay's constantly shifting accounts of persecution are not credible. The substantial evidence standard acknowledges that the IJ is in the best position to assess an alien's credibility. See Chen v. Gonzales, 434 F.3d 212, 220-21 (3d Cir. 2005). When that assessment is reasonable—even if it is not the only assessment that

is plausible—we will not disturb it.[1] Consequently, we conclude that the IJ's decision was supported by substantial evidence.[2]

Accordingly, we will deny petition.

_____

[1] Plumbay also argues that the IJ's adverse credibility determination was insufficient to dispose of her claim under the Convention Against Torture, which must be analyzed on its own merits. This argument contemplates our reasoning in Zubeda v. Ashcroft which explained that an adverse credibility determination "for purposes of . . . [a petitioner's] asylum and withholding of deportation claims does not defeat her ability to meet her burden of proof under the Convention Against Torture." 333 F.3d 463, 476 (3d Cir. 2003) (internal quotation marks omitted). Still, "an alien's credibility, by itself, may satisfy his burden or doom his claim as to both withholding of removal and protection under the Convention." Muhanna v. Gonzales, 399 F.3d 582, 589 (3d Cir. 2005) (quoting Dia v. Ashcroft, 353 F.3d 228 (3d Cir. 2003) (internal alterations and quotation marks omitted). Accordingly, regarding the Convention Against Torture, we conclude that, considering the IJ's adverse credibility determination along with the remaining record, substantial evidence supports a conclusion that Plumbay will not "more likely than not" face torture if removed to Albania. Zubeda, 333 F.3d at 471.

[2] We note that a petition for withholding of removal is subject to a more stringent standard than that required to establish eligibility for asylum. See Ilchuk v. Attorney General, 434 F.3d 618, 624 (3d Cir. 2006). As such, Plumbay's petition for withholding of removal must be denied.