

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-29-2009

# Dweh Mark v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2691

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Dweh Mark v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1285.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1285

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2691
_____

DWEH MARK,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A94-101-879)

Initially Docketed as an Appeal from MDPA 04:08-cv-01081
Prior to the Enactment of the Real ID Act of 2005
Immigration Judge: Honorable Jeffrey L. Romig

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 19, 2009

Before: SLOVITER, AMBRO and GREENBERG, <u>Circuit Judges</u>

(Opinion Filed May 29, 2009)
_____

OPINION
_____

PER CURIAM

Dweh Mark petitions for review of the Board of Immigration Appeals' ("BIA")

final order of removal. For the following reasons, we will deny the petition.

I.

Mark is a native and citizen of Liberia who came to the United States on a visitor's visa in 1988. He had temporary protected status until 2000. In April 2005, he was convicted of conspiracy to distribute, and possession with intent to distribute, methamphetamine, cocaine and other drugs under 21 U.S.C. §§ 841 and 846, and was sentenced to 57 months of imprisonment. The Government then instituted removal proceedings on the grounds that Mark had overstayed his visa and had been convicted of an aggravated felony and a controlled substance violation. See 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1227(a)(2)(B)(i).

Mark concedes both the convictions and removability. He seeks asylum, withholding of removal and relief under the Convention Against Torture ("CAT") on the grounds that he fears mistreatment in Liberia because he is homosexual and HIV-positive. Mark appeared pro se before an Immigration Judge ("IJ") by video teleconference. He testified that, before he left Liberia at age twenty, fellow students taunted, beat, and on one occasion stabbed him because of his homosexuality. (A.122-23.) He testified that he was never arrested because of his homosexuality, and that police instead sometimes helped him and made sure he got home safely. (A.121-22.) He also fears that that he will not be able to obtain HIV medication in Liberia. (A.124.) The IJ concluded that Mark was not eligible for asylum or withholding of removal because he had been convicted of a

2

"particularly serious crime." See 8 U.S.C. §§ 1158(b)(2)(A)(ii) (asylum) and 1231(b)(3)(B)(ii) (withholding). The IJ denied deferral of removal under CAT because Mark had presented no evidence that he would be tortured by the Liberian government or with its acquiescence on return.

The BIA dismissed Mark's appeal and adopted the IJ's reasoning in all respects. Mark sought review of the BIA's order by filing pro se a habeas petition, which the District Court transferred to this Court pursuant to the REAL ID Act to be treated as a petition for review. See 8 U.S.C. § 1252(a)(5); Kamara v. Att'y Gen., 420 F.3d 202, 210-11 (3d Cir. 2005).[1]

_____

[1]Mark has submitted certain materials that are not contained in the agency record, and has filed what we construe as a motion to supplement that record. Those materials include his medical records (which are not necessary, because Mark's medical condition is not in dispute), and additional background material regarding Liberia. The Government has responded with a motion to strike Mark's extra-record submissions and to proceed on the certified administrative record pursuant to Fed. R. App. P. 30(f). Because our review is limited to the record before the Agency, see 8 U.S.C. § 1252(b)(4)(A); Berishaj v. Ashcroft, 378 F.3d 314, 330 (3d Cir. 2004), the Government's motion is granted and Mark's motion is denied. Mark may obtain review of his additional materials only by filing a motion to reopen with the BIA, see 8 C.F.R. § 1003(c), though we express no opinion on whether those materials warrant reopening or whether reopening would otherwise be proper. Mark has also filed a petition "for the Court's intervention," in which he argues that his detention violates our order staying his removal and claims that he is not receiving the proper medication (which the Government denies). Mark's detention does not violate the stay of removal, see Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 339 (3d Cir. 2008), and his request for intervention regarding his medication is outside the scope of this petition for review, see 8 U.S.C. § 1252(a)(1). Accordingly, his petition for intervention is denied. This denial is without prejudice to Mark's ability to file an action regarding his medication in the appropriate District Court, though we express no opinion on the propriety of such an action. The Government's

(continued...)

3

II.

Subject to certain exceptions, we have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1). Because the BIA adopted the IJ's reasoning, we review the opinion of the IJ. See Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir. 2007). The Government has filed a motion to dismiss Mark's petition on the grounds that we lack jurisdiction to review his final order of removal because he has been convicted of both an aggravated felony and a controlled substance violation, which Mark does not dispute. See 8 U.S.C. § 1252(a)(2)(C) (referencing, inter alia, 8 U.S.C. §§ 1182(a)(2) and 1227(a)(2)(A)(iii)). That jurisdictional bar, however, does not apply to "constitutional claims or questions of law," § 1252(a)(2)(D), and we conclude that Mark's petition presents two questions of law that we have jurisdiction to review. Thus, although our jurisdiction is circumscribed, the Government's motion to dismiss is denied.

A.    Eligibility for Asylum and Withholding of Removal

The IJ denied Mark's claims for asylum and withholding of removal because it concluded that his conviction was for a "particularly serious crime," which renders him ineligible for either form of relief. See 8 U.S.C. §§ 1158(b)(2)(A)(ii) (asylum) and 1231(b)(3)(B)(ii) (withholding). Whether a petitioner has been convicted of a "particularly serious crime" is a question of law that we review de novo, subject to

───────────────

(...continued)
motion for an extension of time to respond to Mark's petition for intervention is denied as moot.

4

established principles of deference on agency review. See Lavira v. Att'y Gen., 478 F.3d 158, 164 (3d Cir. 2007), overruled on other grounds by Pierre v. Att'y Gen., 528 F.3d 180, 189 (3d Cir. 2008) (en banc).

The relevant analysis is different for purposes of asylum than for purposes of withholding. In the asylum context, a petitioner's crime automatically constitutes a "particularly serious crime" if it is an "aggravated felony" under 8 U.S.C. § 1101(a)(43). See 8 U.S.C. §§ 1158(b)(2)(A)(ii) and (b)(2)(B)(i); Ilchuk v. Att'y Gen., 434 F.3d 618, 621 (3d Cir. 2006). Mark's crime was an "aggravated felony," thus automatically rendering him ineligible for asylum, and Mark has never argued otherwise.[2]

Instead, Mark appears to argue that his crime was not "particularly serious" for purposes of withholding.[3] In the withholding context, aggravated felonies automatically constitute "particularly serious" crimes only when "the alien has been sentenced to an aggregate term of imprisonment of at least 5 years." 8 U.S.C. § 1231(b)(3)(B)(iv). A

---

[2] 8 U.S.C. § 1101(a)(43)(B) includes in the definition of "aggravated felony" a "drug trafficking crime (as defined in section 924(c) of Title 18)," which in turn defines "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.)," which contains the statutes of conviction.

[3] The Government argues that Mark failed to exhaust this issue before the BIA. It is true, as the BIA noted, that Mark did not specifically challenge the IJ's conclusion that his crime was "particularly serious" for purposes of eligibility for withholding of removal. Nevertheless, Mark argued before the IJ that he was eligible for withholding of removal notwithstanding the IJ's rulings, and the BIA sua sponte affirmed the IJ's specific ruling in this regard. Accordingly, Mark adequately exhausted this issue before the BIA. See Hoxha v. Holder, 559 F.3d 157, 159-62 (3d Cir. 2009) (describing this Court's "liberal exhaustion policy").

lesser sentence, however, "shall not preclude the Attorney General from determining" that the crime in question nevertheless was "particularly serious." Id.; Lavira, 478 F.3d at 161. The BIA has concluded that drug trafficking crimes, which Mark's are, presumptively constitute "particularly serious crimes." See Lavira, 478 F.3d at 161-62 (discussing Matter of Y-L-, 23 I. & N. Dec. 270, 276-77 (BIA 2002)). The BIA has acknowledged, however, "'the possibility of the very rare case where an alien may be able to demonstrate extraordinary and compelling circumstances'" rebutting that presumption. Id. (quoting Matter of Y-L-, 23 I. & N. Dec. at 276). The BIA also set forth six requirements that an alien would have to satisfy as a prerequisite for consideration of whether "other, more unusual circumstances" might "justify a departure from the default interpretation that drug trafficking felonies are 'particularly serious crimes.'" Id. (quoting Matter of Y-L-, 23 I. & N. Dec. at 277).

In this case, the IJ cited Matter of Y-L- and concluded that Mark's crime was "particularly serious" for withholding purposes. Mark appears to argue that his crime was not "particularly serious" because he was sentenced only to 57 months of imprisonment, which (just barely) is under the threshold for rendering his crime automatically disqualifying under the statute. As explained above, however, the Attorney General may determine that a crime for which a lesser sentence was imposed nevertheless was "particularly serious." See Lavira, 478 F.3d at 161. The IJ applied Matter of Y-L- and made that determination here. Mark neither argued before the BIA nor argues here that

6

the IJ erred in applying that decision, and we perceive no error in that regard.[4]

### B. Denial of Relief under CAT

The IJ denied relief under CAT because Mark failed to present any evidence that he would be tortured by the Liberian government, or with its acquiescence, on return. Mark argues that, because he is openly gay, HIV positive and a convicted felon, he likely faces torture on return to Liberia in the form of denial of his HIV medication or affirmative physical mistreatment. The IJ concluded that, although the record contained some evidence that homosexuality is illegal in Liberia (A.141), Mark presented no evidence that he would be arrested or subjected to mistreatment, whether rising to the level of torture or otherwise, if returned to Liberia. The IJ also concluded that Mark had presented no evidence that any mistreatment he might face would come at the hands or with the acquiescence of the Liberian government. The IJ noted in that regard an article of record describing the new Liberian government's cooperation with the United Nations

---

[4]The IJ did not discuss the factors enumerated in Matter of Y-L- or specifically consider whether Mark's crime warranted a departure from the presumption that it was "particularly serious." Although the IJ could have addressed this issue more thoroughly, we perceive no error in this regard. In Lavira, we remanded for consideration of these issues where, inter alia, the IJ failed to cite Matter of Y-L- and failed to acknowledge or discuss record evidence that appeared to place the alien "squarely within the exception carved out by the six-part test in Matter of Y-L-." Lavira, 478 F.3d at 165. In this case, by contrast, the IJ cited Matter of Y-L-, and our review of the record reveals nothing suggesting that Mark might qualify for the exception set forth therein, and thus nothing suggesting that the IJ failed to consider any evidence of record. To the contrary, although we do not decide the issue, the circumstances set forth in the Presentence Investigation Report strongly suggest that Mark does not qualify for this exception, (A.181, 184-86), and Mark has never argued that he does.

in developing a program to provide assistance, including medication, to those with HIV/AIDS. (A.148-49.) In sum, the IJ characterized Mark's fear of the current Liberian government as "fear of the unknown." (IJ Dec. at 6) (A.38).

Ordinarily, we would review the IJ's conclusion that Mark failed to meet his burden of proof under the deferential substantial evidence standard. See Abdulrahman v. Ashcroft, 330 F.3d 587, 599 (3d Cir. 2003). As the Government argues, however, Mark's conviction of an aggravated felony and controlled substance violation deprive us of jurisdiction to review that factual issue. See Lavira, 478 F.3d at 164.[5] But Mark does raise one argument on this claim that we construe as presenting a question of law. Mark argues that the IJ erred because he based his ruling on assumptions about conditions in Liberia and should have conducted "a deeper analysis than the record of this case shows." Although Mark's argument is somewhat unclear, we construe him as arguing that the IJ improperly held him to the burden of demonstrating the likelihood of torture on return to Liberia instead of affirmatively determining what conditions in Liberia actually are. That argument lacks merit.

We have recognized that IJs have a duty to assist applicants in developing the record in certain respects, such as notifying an applicant of what corroborating evidence

---

[5]We nevertheless note that our review of the record reveals nothing that might call the IJ's ruling into question. See, e.g., A.127 (when asked why he was afraid of the Liberian government, Mark testified: "I didn't know what will happen, Judge, when you send me back home. I don't know. I don't have no clue what will happen to me when I, send me back home. And I'm scar[ed].").

will be expected and allowing the applicant to obtain it or explain its absence before denying a claim for lack of corroboration. See Mulanga v. Ashcroft, 349 F.3d 123, 136 (3d Cir. 2003) ("[W]hile the burden of proof is borne by the applicant, the IJ and the [then-]INS have a responsibility to make sure that qualified applicants are provided refuge in accordance with the obligations imposed by international law."). But we have never interpreted that obligation to relieve applicants of their ultimate burden of proving entitlement to relief under CAT, which is well-established. See Pierre, 528 F.3d at 183; Lavira, 478 F.3d at 166; Mulanga, 349 F.3d at 136.

In this case, Mark does not allege that the IJ prevented him from presenting any particular evidence. Moreover, although Mark himself offered no evidence, the IJ patiently questioned him about the basis of his claim, and the record contains the 2006 Department of State country report for Liberia in addition to the articles referenced above, which the Department of State forwarded to the IJ in response to the Immigration Court's notification regarding Mark's proceeding. Accordingly, the IJ did not violate his duty to develop the record and did not err in holding Mark to his well-established burden of proof.

Finally, we note that all IJs before whom Mark appeared conducted proceedings with the appropriate patience and sensitivity to Mark's medical condition and pro se status. The IJ before whom Mark initially appeared gave him a list of pro bono counsel and adjourned his hearing twice, for a period of six months, to allow him to obtain

9

counsel, which he proved unable to do. At Mark's third hearing, and consistent with his obligations under 8 C.F.R. § 1240.11(c)(1), the IJ questioned Mark, ascertained that he was afraid of returning to Liberia, informed him of the relief for which he was potentially eligible, and adjourned the hearing again to allow Mark to file an application. Finally, after an additional adjournment, the IJ who ruled on Mark's claims thoroughly and patiently questioned him and repeatedly expressed sympathy for his fear and medical condition. He also informed Mark that he could request prosecutorial discretion from the Department of Homeland Security on the basis of his medical condition. Mark raises no claim of error with regard to any of the foregoing, and we perceive none.

Accordingly, we will deny Mark's petition for review.