**Karen URQUIA–RODRIGUEZ,**
**Petitioner**

v.

**ATTORNEY GENERAL OF**
**the UNITED STATES,**
**Respondent.**

**No. 09–1798.**

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) March 24, 2010.

Filed: March 25, 2010.

Sigang Li, Esq., Philadelphia, PA, for Petitioner.

Sharon M. Clay, Esq., Eric H. Holder, Jr., Esq., Thomas W. Hussey, Esq., Janice K. Redfern, United States Department of Justice, Washington, DC, for Respondent.

Before: RENDELL, FISHER and GARTH, Circuit Judges.

OPINION

PER CURIAM.

Petitioner Karen Urquia–Rodriguez, a citizen of Honduras, seeks review of a final

order of removal entered by the Board of Immigration Appeals, which denied her applications for asylum, withholding of removal, and relief under the Convention Against Torture. The petition for review will be denied.

## I.

Urquia–Rodriguez entered the United States without inspection in 1998 and was issued a Notice to Appear ("NTA") by the Department of Homeland Security ("DHS").[1] At a hearing before an Immigration Judge ("IJ"), Urquia–Rodriguez conceded removability, but sought asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

At her removal hearing, Urquia–Rodriguez testified that, in 1998, she was attacked and raped in Honduras by a group of six well-known gang-members. (A.R. 133, 219.) She testified that these individuals threatened her that if she informed the police, they would kill her and her family. (*Id.*) Out of fear, Urquia–Rodriguez did not go to the police or seek medical attention, but was treated at home with natural medicines by her mother. (A.R.150.) In addition to this incident, Urquia–Rodriguez testified that several of her family members have been murdered. Her father was killed before she was born when he intervened in a dispute on behalf of his brother. (A.R.219.) In 2001, her mother-in-law was murdered. (A.R.219.) Her brother-in-law was murdered in 2002, and in 2007, her sister and her niece were shot when they were attacked by local gang members. (*Id.*) Urquia–Rodriguez also testified that her uncle was murdered, but she did not know the identity of the killer or why he was killed. (A.R.134.) Urquia–Rodriguez testified that she is afraid that she will be raped or killed if returned to Honduras. (A.R.136, 220.)

The IJ determined that Urquia–Rodriguez was statutorily ineligible for asylum because her application was not filed within one year of entering the United States, *see* 8 U.S.C. § 1158(a)(2)(B), and that even if the application had been timely, she failed to establish that she suffered past persecution or that she would suffer future persecution on account of a protected ground. (A.R.89.) The IJ denied Urquia–Rodriguez's request for withholding of removal because she failed to form a "nexus" between the harm she suffered and a statutorily protected basis. (A.R.34.)

With respect to her CAT claim, the IJ found Urquia–Rodriguez's testimony to be credible, and acknowledged that rape and murder would be considered a form of torture under the CAT, but denied the claim because she failed to demonstrate that she or her family was being specifically targeted or that the government had any involvement in the crimes. (A.R.95–97.) The IJ acknowledged that violence and crime is pervasive throughout Honduras, but held that the government's inability to control crime was not the same as its acquiescence, and that the Honduran government was not willfully blind to the activities of criminals. (A.R.96.) The IJ also considered whether Urquia–Rodriguez had the possibility of relocating if returned to Honduras, and found that she did, as there were no restrictions on movement within the country. (A.R.94, 97.)

Urquia–Rodriguez appealed the denial of her claim under the CAT to the Board of Immigration Appeals ("BIA"). The BIA affirmed the IJ's determination, holding that Urquia–Rodriguez failed to

---

1. Urquia–Rodriguez was charged with removability for entering the country without inspection, pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), and for having been convicted of a crime involving moral turpitude.

demonstrate a specific intent by the government to torture her. (A.R.3.) On March 20, 2009, Urquia–Rodriguez filed a timely petition for review with this Court. Urquia–Rodriguez's brief argues that in assessing her CAT claim the BIA (1) incorrectly required a showing of "specific intent" contrary to our holding in *Zubeda v. Ashcroft,* 333 F.3d 463 (3d Cir.2003), and (2) interpreted the requirement that the acts of torture involve "government acquiescence" in a manner inconsistent with our holding in *Silva–Rengifo v. Att'y Gen.,* 473 F.3d 58 (3d Cir.2007). Urquia–Rodriguez's petition for review does not challenge the denial of her claims for asylum or withholding of removal.

## II.

We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1). Because Urquia–Rodriguez was ordered removed, in part, based on her commission of a crime involving moral turpitude, we have jurisdiction to review her petition only to the extent that it raises a constitutional or legal issue. *See* 8 U.S.C. §§ 1252(a)(2)(C) & (D); c.f. *Ilchuk v. Att'y Gen.,* 434 F.3d 618, 621 (3d Cir. 2006). Whether the BIA properly interpreted and applied the terms "specific intent" and "government acquiescence" is a question of law over which we have jurisdiction. *See Toussaint v. Att'y Gen.,* 455 F.3d 409, 412 n. 3 (3d Cir.2006).

Because the BIA adopted some of the findings of the IJ and made additional findings, we will review the decisions of both the BIA and the IJ. *Gomez–Zuluaga v. Att'y Gen.,* 527 F.3d 330, 339 (3d Cir. 2008). We review the BIA's legal conclusions de novo, subject to established principles of deference, *Chevron v. Natural Res. Def. Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), but defer to the BIA's factual findings unless

"any reasonable adjudicator would be compelled to conclude to the contrary," *Wang v. Ashcroft,* 368 F.3d 347, 349 (3d Cir.2004) (quoting 8 U.S.C. § 1252(b)(4)(B)).

The applicant for relief under the CAT bears the burden of proving that it is more likely than not that she would be tortured if removed to the proposed country of removal. 8 C.F.R. § 208.16(c)(2); *see also Kamara v. Att'y Gen.,* 420 F.3d 202, 212–13 (3d Cir.2005). For an act to constitute torture under the CAT, it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or control of the victim; and (5) not arising from lawful sanctions. *Id.* at 213; *see also* 8 C.F.R. § 208.18(a)(1). The requirement that the torture be intentionally inflicted requires a showing that the "prospective torturer will have the goal or purpose of inflicting severe pain or suffering" on the petitioner. *Pierre v. Att'y Gen.,* 528 F.3d 180, 190 (3d Cir.2008) (en banc). The "acquiescence of a public official" requirement does not require actual knowledge of torturous conduct, but can be satisfied by a showing that the government is willfully blind to the conduct in question or has breached its legal responsibility to prevent it. *Gomez–Zuluaga,* 527 F.3d at 350; *Silva–Rengifo,* 473 F.3d at 70.

## III.

The BIA denied Urquia–Rodriguez's CAT claim, in part, because she failed to demonstrate that any of the crimes committed against her or her family were made with an intent to torture her. (A.R.3.) Urquia–Rodriguez first argues that the Board erred as a matter of law by requiring a showing of a "specific intent" to torture her, as contrary to our holding in *Zubeda v. Ashcroft.* In *Zubeda,* we

stated that deferral of removal under the CAT does not require a specific intent to inflict torture. 333 F.3d at 473. We have since held, however, that a showing of "specific intent" to cause severe pain and suffering is required to establish torture, and rejected as dicta any statements in *Zubeda* to the contrary. *See Auguste v. Ridge*, 395 F.3d 123, 148 (3d Cir.2005); *see also Toussaint*, 455 F.3d at 416. If there is no evidence that the "prospective torturer will have the goal or purpose of inflicting severe pain or suffering," the specific intent requirement of CAT is not fulfilled. *Pierre*, 528 F.3d at 190. This showing is required even when the conditions in the country of removal are such that removal is likely to result in harm to the petitioner. *Id.* at 191 (denying CAT relief where petitioner was likely to experience pain and suffering due to poor conditions in Haitian prisons, but failed to show that Haitian officials had the specific intent to inflict severe pain or suffering by placing him in detention upon removal).

Urquia–Rodriguez testified that she and her family were the victims of several criminal acts that she claimed would continue upon her return. Other than a generally high rate of violent crime, however, the IJ found no evidence of any connection between the death of her father, the shooting of her sister and niece, and the death of her uncle. The IJ concluded from this that Urquia–Rodriguez had been the victim of a random criminal act and was not singled out for the specific purpose of being tortured. (A.R.93, 95.) Although the record establishes that crime is rampant in Honduras and there is a reasonable fear of reprisal (A.R.136, 220), the BIA correctly concluded that Urquia–Rodriguez failed to show that the alleged torturers have the specific goal of inflicting severe pain or suffering upon her.

Urquia–Rodriguez also contends that the BIA interpreted the term "government acquiescence" in a manner contrary to our decision in *Silva–Rengifo*. (A.R.3.) Because we find that Urquia–Rodriguez failed to demonstrate specific intent, a required showing in order to obtain relief under the CAT, we need not reach this argument.[2] *See Pierre*, 528 F.3d at 189. The record supports the conclusion that Urquia–Rodriguez did not meet her burden of establishing that it is more likely than not that she will be tortured if returned to Honduras.

## IV.

For the foregoing reasons, the petition for review will be denied.

---

**2.** In any event, we would find that Urquia–Rodriguez has not met her burden of demonstrating that the Honduran government is "willfully blind" to the torture of its citizens by third parties. *Silva–Rengifo*, 473 F.3d at 65. While the State Department report Urquia–Rodriguez relies on indeed shows that government corruption, police brutality, and gang violence is widespread in Honduras, nothing in the report suggests that Urquia–Rodriguez would be singled out as a victim, or that the government would acquiesce in her victimization. *See Zubeda*, 333 F.3d at 478 (stating that reports of generalized brutality within a country do not, in the absence of additional evidence, allow an alien to sustain his or her burden under the CAT). As unfortunate as the situation is in Honduras for victims of crime, the BIA correctly concluded that Urquia–Rodriguez failed to make the appropriate showing that government officials knew of—let alone acquiesced to—the crime and violence suffered by her and her family.