**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 17-2106 & 19-1767
_____

PETE JOHNSON,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review from the Board of Immigration Appeals
BIA-1 No. A028-208-956
Immigration Judge: The Honorable Walter A. Durling
_____

Argued September 26, 2019

Before: SMITH, *Chief Judge*, McKEE, and PHIPPS, *Circuit Judges*

(Filed: December 4, 2019)

Augustus J. Golden  [**ARGUED**]
Covington & Burling
850 10th Street, N.W.
One City Center
Washington, DC 20001
        *Counsel for Petitioner Pete Johnson*

William P. Barr
Virginia M. Lum
Margaret A. O'Donnell

1

Gregory A. Pennington, Jr.  [**ARGUED**]
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
    *Counsel for Respondent Attorney General of the United States of America*

_____

OPINION[*]

_____

SMITH, *Chief Judge*.

The Board of Immigration Appeals (BIA) dismissed Petitioner Pete Johnson's appeal of an order of removal and denied his motion to reopen proceedings.  For the reasons set forth below, we will deny his consolidated petitions for review.

I.

Johnson, a native and citizen of Liberia, gained admission to this country as a refugee in 1994.  He received lawful permanent residency the following year.

In April 2015, Johnson pled guilty to manufacturing, delivering, or possessing with intent to manufacture or deliver a controlled substance, 35 Pa. Stat. and Cons. Stat. Ann. § 780-113(a)(30), and was sentenced to a maximum of three years of probation.  According to the criminal information, the drug involved was heroin.  After pleading guilty in February 2016 to two counts of terroristic threats with intent to terrorize another under 18

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pa. Cons. Stat. § 2706(a)(1), Johnson was sentenced to six to twenty-four months in prison. Determining that these convictions constituted aggravated felonies, the U.S. Department of Homeland Security served Johnson with a Form I-862, Notice to Appear, charging him as removable.[1]

Johnson appeared *pro se* at his first removal hearing, held on August 24, 2016, in York, PA. At the Immigration Judge's (IJ) prompting, Johnson acknowledged his drug conviction involving heroin and the terroristic threats convictions. The IJ determined that these were aggravated felonies rendering Johnson deportable. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."). Although Johnson initially opted to appeal the IJ's decision, he changed his mind and requested an application for asylum. The IJ stated that the application would be mailed to him shortly.

When the IJ held a further hearing on October 12, 2016, Johnson was represented by counsel. The IJ noted that at the prior hearing, he had "sustained the grounds of [Johnson's] removability based on the evidence of the Government and held it over for, for a 589."[2] JA 279. The IJ referenced "a 589" several more times as he discussed the need

---

[1] According to the Notice to Appear, Johnson was also subject to removal based on two crimes involving moral turpitude, but the Immigration Judge did not rely on this basis for removal.

[2] *See I-589, Application for Asylum and for Withholding of Removal*, U.S. Citizenship & Immigration Servs. (May 23, 2019), https://www.uscis.gov/i-589 (offering Form I-589

for further proceedings now that Johnson had counsel.[3]  The IJ scheduled a further hearing for November 9, 2016, but it was later rescheduled for December 21, 2016.

At the final hearing in December, the IJ rendered an oral decision reiterating that the drug and terroristic threats convictions constituted aggravated felonies and ordering Johnson's removal to Liberia.  Referring to the drug conviction, the judge noted that the information identified the drug as heroin.  He did not refer to any Form I-589, nor did Johnson or his then-counsel make any comment on the record concerning such a form.

After retaining new counsel, Johnson appealed to the BIA, stating in entirety: "The Immigration Judge's removal order deprived Respondent's constitutional rights to due process of law under both the United States and the Commonwealth of Pennsylvania

---

indicating it can be used to apply for asylum and for withholding of removal under both U.S. immigration law and the Convention Against Torture).

[3] Of particular interest, the IJ had the following exchange with Johnson's then-counsel that is reprinted here with clerical edits:

| | |
|---|---|
| Judge: | He's not eligible for [temporary protected status (TPS)] -- |
| Counsel: | It can -- |
| Judge: | -- because of his conviction.  Because -- |
| Counsel: | I understand that but it can't -- |
| Judge: | -- I have a feeling it's going to be a 589 or nothing. |
| Counsel: | -- they can't send him back to Liberia at this point with the TPS. |
| Judge: | Well, that's why we have a 589, potential, coming up.  He had indicated he did have a fear of return. |
| Counsel: | Correct. |
| Judge: | So I have that document.  Okay? |

JA 284-85.

4

Constitution." JA 272. He checked the box on the Notice of Appeal form to indicate that he would file a brief as well. But when Johnson's counsel timely sought an extension of time to file that brief, it was rejected—after the briefing deadline—because it listed an incorrect alien registration number. When counsel filed a corrected extension request, the BIA denied it as untimely. On April 19, 2017, the BIA dismissed the appeal on the merits.

Johnson timely petitioned this Court for review of the BIA's final order of removal, *see* 8 U.S.C. § 1252(b)(1), which this Court stayed. The Court referred the Attorney General's motion to dismiss for lack of jurisdiction to a merits panel and appointed new counsel for Johnson.[4] Counsel pursued additional documents from the government, including "the I-589 form referenced during the October 12, 2016 hearing," JA 154, but the government invoked 8 U.S.C. § 1252(b)(4)(A) to justify its refusal to produce any documents beyond the certified administrative record.

Separately, Johnson sought reopening of the BIA proceedings on January 2, 2019, but the agency denied his motion as untimely. In the BIA's view, the request was untimely from either of two perspectives. Based on the arguments in the motion, the agency considered whether it should be construed as a motion for reconsideration of putatively errant rulings by the IJ and/or BIA. But Johnson had not identified an exception to the thirty-day deadline for motions for reconsideration. *See* 8 U.S.C. § 1229a(c)(6)(B). Nor was Johnson exempt from the ninety-day deadline for motions to reopen, 8 U.S.C. §

---

[4] The Court expresses its appreciation for Augustus J. Golden's able representation of the petitioner on a *pro bono* basis.

5

1229a(c)(7)(C)(i), for he failed to furnish "evidence of a material change in country conditions that was unavailable and undiscoverable during the initial proceeding." JA 176 (citing 8 U.S.C. § 1229a(c)(7)(C)(ii)). When Johnson timely sought our review of the denied motion to reopen, that petition was consolidated with his pending petition. 8 U.S.C. § 1252(b)(6).

## II.

We have authority to review a final order of removal, 8 U.S.C. § 1252(a)(1), such as the BIA's dismissal of an appeal, *Abdulai v. Ashcroft*, 239 F.3d 542, 545-46, 548-49 (3d Cir. 2001), or its denial of a motion to reopen, *Cruz v. Att'y Gen.*, 452 F.3d 240, 246 (3d Cir. 2006). But our jurisdiction does not extend to any issue that a petitioner failed to exhaust in the administrative process. *See* 8 U.S.C. § 1252(d)(1); *Castro v. Att'y Gen.*, 671 F.3d 356, 365 (3d Cir. 2012).

When the BIA denies a motion to reopen proceedings, we consider whether the agency abused its discretion by acting in a manner that is "arbitrary, irrational, or contrary to law." *Filja v. Gonzales*, 447 F.3d 241, 251 (3d Cir. 2006) (quoting *Sevoian v. Ashcroft*, 290 F.3d 166, 170 (3d Cir. 2002)) (internal quotation marks omitted). We examine *de novo* the BIA's legal determinations and its "application of law to uncontested facts." *Ilchuck v. Att'y Gen.*, 434 F.3d 618, 621 (3d Cir. 2006).

## III.

Of Johnson's four claims in this consolidated review, three concern his dismissed appeal. Because all three are unexhausted, we lack jurisdiction to reach their merits.

6

## A.

In Johnson's view, he suffered a Fifth Amendment due process violation when he was deprived of "an opportunity to present any arguments" for asylum, withholding of removal, and protection under the Convention Against Torture, despite "first stat[ing] his intent to raise such arguments at the August 24, 2016 hearing." Pet.'s Br. at 6, 21. There is no evidence, however, that Johnson ever followed through on that intention, despite a number of opportunities to do so.

Most importantly, Johnson could have sent a Form I-589 to the IJ. No such submission appears in either the original certified administrative record or the supplement filed in the consolidated proceedings. That lacuna is conspicuous because our review is limited to "the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). Johnson maintains that "[i]t is unclear whether the IJ received an I-589 form or not." Pet.'s Br. at 21 n.3. He tries to exploit an ambiguous comment by the IJ at the October 12, 2016 hearing about "hav[ing] that document." *Supra* note 3. But we are not persuaded that this vague comment establishes that Johnson made the filing necessary to trigger asylum proceedings during removal. *See* 8 C.F.R. § 208.3 (providing that "[a]n asylum applicant must file Form I-589"); *id.* § 208.2(b) (recognizing IJ's "exclusive jurisdiction over asylum applications filed by an alien who has been served a . . . Form I-862, Notice to Appear, after the charging document has been filed with the Immigration Court").

7

To prepare the I-589, either *pro se* or through counsel, Johnson would have had to assemble extensive personal information, answer sensitive questions about his past experiences and present fears, and sign the form under penalty of perjury. Johnson eventually did so when he attached an I-589 to his motion to reopen BIA proceedings. Yet Johnson's current counsel, at oral argument, was unable to confirm that his client had previously submitted an I-589 to the IJ.

Compounding this glaring omission, there is no record that Johnson or his then-counsel developed his arguments for asylum or related protections at the October 12, 2016 hearing, the December 21, 2016 hearing, or anytime in between.

Still, Johnson could have raised the alleged due process violation in his appeal to the BIA. Because he did not file a brief, he effectively stood on his Notice of Appeal. But that Notice referred only generically to one or more due process violations in a single sentence that lacked any reference to a right to file an I-589. This Court requires only "some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal." *Bin Lin v. Att'y Gen.*, 543 F.3d 114, 121 (3d Cir. 2008) (quoting *Joseph v. Att'y Gen.*, 465 F.3d 123, 126 (3d Cir. 2006)) (internal quotation marks omitted). That said, "the nature of the notice provided is central to the inquiry of exhaustion because only notice that is legally sufficient will afford the BIA an opportunity to resolve the controversy in the first instance." *Hoxha v. Holder*, 559 F.3d 157, 161 (3d Cir. 2009). Even a terse Notice of Appeal would have supplied grist to the administrative process if it

8

had identified the issue with some specificity. Simply invoking a broad constitutional doctrine without making any specific allegations does not do so.

Johnson failed to exhaust his claim that he should have had a chance to seek asylum and related protections, so we lack jurisdiction to reach the merits. *Castro*, 671 F.3d at 365.

## B.

Johnson also asserts that the IJ erred as a matter of law by relying on a charging document, without corroboration, to determine that his drug conviction involved heroin. By affirming, the BIA purportedly committed the same error. The record does not reflect any attempt to raise this issue with the IJ or the BIA. In the absence of exhaustion, we have no jurisdiction to consider it now. *Id.*

## C.

Johnson sees another due process violation in the BIA's rejection of his then-counsel's timely extension request. Johnson could have raised this argument at least twice before the agency. When the BIA denied the untimely corrected request, its notice to Johnson expressly identified an opportunity to submit a tardy brief with an accompanying motion for consideration of such a brief. Johnson filed no such brief and no such motion. Nor did Johnson raise this issue in a timely motion for reconsideration of the BIA's dismissal of his appeal. Even to the extent his motion to reopen actually sought reconsideration of the BIA's putative errors, it did not raise this issue. We thus have no jurisdiction to consider this unexhausted claim. *Id.*

9

IV.

Johnson's only other claim concerns the BIA's determination that his motion to reopen did not show material evidence of a change in country conditions. Such motions must be based on "new facts" that are "supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(B). But Johnson's motion to reopen—filed more than ninety days after the BIA's dismissal—was impermissibly tardy unless it fell within the following exemption:

> "There is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for relief under sections 1158 or 1231(b)(3) of this title and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding."

*Id.* § 1229a(c)(7)(C)(ii) (footnote omitted); 8 C.F.R. § 1003.2(c)(3)(ii) (implementing regulation); *see also id.* § 1229a(c)(7)(C)(i) (ordinarily ninety-day deadline). Johnson indeed sought reopening to apply for asylum under Section 1158, withholding of removal under Section 1231(b)(3), and CAT protection. And the remainder of the implementing regulation was satisfied, he argued, because political conditions had changed in his native Liberia.[5]

---

[5] Johnson's proposed I-589 also sought asylum and other protection based on his alleged sexual orientation. The BIA found no showing of a material change in Liberian conditions for bisexual individuals like Johnson. He does not challenge the BIA's conclusion that it could not reopen proceedings on those grounds.

10

According to his proposed I-589, before Johnson's family emigrated from Liberia, a rebel group imprisoned his parents during the Liberian civil war and threatened them with death. Johnson himself, who was a child at the time, was directly at risk too: "One of my father's nephews joined the rebels and personally swore to kill my mother and me if we ever returned to Liberia." JA 138. At the time of his motion to reopen, members of the rebel group were in power in Liberia, and the relative who made the threats remained in the country.

Disregarding his counsel's arguments, the BIA focused on what it deemed to be Johnson's evidence.[6] But the agency's review did not unearth anything novel since "the time of his 2017 hearing"[7] that could warrant a motion to reopen. JA 177. Moreover,

---

[6] The BIA considered the statements in Johnson's proposed Form I-589, but it is not clear whether the agency reviewed the other attachments to his motion to reopen. *See* JA 176 ("As the respondent has not submitted a separate statement, we look to his asylum application as evidence of his factual allegations (Motion, Tab 9)."). The attachments at those other "tabs" contain the evidence supporting Johnson's assertions in the I-589 itself. Johnson challenges only the agency's conclusion, not the scope of the evidence that it reviewed. In any case, if and to the extent that the BIA erred by improperly limiting the scope of review, "we will view [the] error as harmless and not necessitating a remand to the BIA [for] it is highly probable that the error did not affect the outcome of the case," for reasons we will address below. *Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011).

[7] The BIA's reference to a "2017 hearing" is another apparent error that neither party raises. We are unaware of any agency hearings in this case in 2017. The only hearings took place before the IJ in 2016, so the BIA probably made a typographical mistake. If, instead, the BIA was referring to its own proceedings in 2017, the agency erred substantively by using the wrong point of reference to assess whether country conditions had changed. *See Filja*, 447 F.3d at 252-54 (determining that previous "proceeding" under 8 U.S.C. § 1229a(c)(7)(C)(ii), or "hearing" under implementing regulation 8 C.F.R. § 1003.2(c)(3)(ii), refers to most recent before IJ, not BIA). The difference, however, is

11

Johnson had not identified any material developments to exempt his filing from the ordinary time limit. Any change did not meet the Section 1229a(c)(7)(C)(ii) standard, the agency determined:

> "The fact that members of the current government include individuals who were in power, and/or supported the rebels, at the time when his family resided in Liberia, and that a family member continues to threatened [sic] harm against [Johnson], without more, fails to reflect a material change for purposes of reopening."[8]

JA 177 (citing cases regarding ongoing conditions or slight changes in conditions). He now argues that the agency erred as a matter of law by "fail[ing] to consider [] evidence," Pet.'s Br. at 31, of "[t]he re-emergence of the political party responsible for the applicant's [and his family's] prior persecution," *id.* (quoting *Shardar v. Att'y Gen.*, 503 F.3d 308, 315 (3d Cir. 2007)) (internal quotation marks omitted).[9]

---

only about four months between the last IJ hearing in December 2016 and the BIA decision in April 2017. The record does not reflect a material change in country conditions during that period, so any such error is harmless. *See Li Hua Yuan*, 642 F.3d at 427.

[8] The BIA may have conflated Johnson's allegation that the threatening relative remains in Liberia, with an allegation that the relative has issued threats continuously or recently. The latter notion is not supported by the record. But the BIA has evidently determined that Johnson would not prevail even if the relative is still issuing threats, so any error is again harmless. *See Li Hua Yuan*, 642 F.3d at 427.

[9] Framing this as a legal issue, rather than a factual one, may be an attempt to skirt a jurisdiction-stripping provision. We are unable to address questions of fact arising from final orders of removal against aliens convicted of aggravated felonies, but we are not precluded from considering questions of law. *See* 8 U.S.C. § 1252(a)(2)(C), (D). We believe that Johnson raises, not a pure legal issue, but an "issue[ ] of application of law to uncontested facts." *Ilchuk*, 434 F.3d at 621. Evaluating the application of law to fact is within our authority even if the jurisdiction-stripping provision applies to this case. *See id.*

We disagree with Johnson's contention that certain precedents about regime change—raised in one sentence of his motion to reopen—dictate a different outcome. *See Shardar*, 503 F.3d 308, *Filja*, 447 F.3d 241. If a political party that persecuted Johnson regained power during the relevant time period, that could rise to the level of a change in country conditions. *See Shardar*, 503 F.3d at 314-15. But Johnson has not shown that kind of political transition between the last IJ hearing in December 2016 and his motion to reopen filed in January 2019. Johnson's motion to reopen did attach some evidence of political success for a few Liberian politicians who allegedly were among, or who supported, the rebels who persecuted Johnson's family. What is lacking is any clear indication of how Johnson would have fared under those politicians' predecessors, to the extent that incumbents were actually displaced in this approximately two-year window. Nor has Johnson shown the kind of whole-party change in power on which his precedents rely. Even though the agency did not expressly address these regime change precedents, we conclude that any error is harmless because we are not persuaded that those precedents require a different result here. *See Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011). We also do not accept Johnson's argument that the BIA should have furnished a fuller explanation of its determinations than the concise reasoning that the agency supplied. *See Filja*, 447 F.3d at 256.

The BIA did not abuse its discretion when it concluded that Johnson's motion to reopen was not exempt from the ninety-day default rule.

V.

13

For the reasons discussed above, we will deny both of Johnson's petitions.[10]

---

[10] In light of this outcome, we need not separately address any aspects of the Attorney General's motion to dismiss.